**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | x | |
| Pamela Suarez, individually on behalf of herself and all others similarly situated, | : : : : | Case No. 7:17-CV-09847-VB-PD |
| Plaintiff, | : : | |
| v. | : : | |
| | : | **AMENDED CLASS ACTION** |
| California Natural Living, Inc., d/b/a California Baby + Kids | : : | **COMPLAINT** |
| | : | **JURY TRIAL DEMANDED** |
| Defendant, | : : : | |
| | x | |

Plaintiff, Pamela Suarez (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1.     This action seeks to remedy the deceptive and misleading business practices of California Natural Living, Inc. d/b/a California Baby (hereinafter "Defendant") with respect to the marketing and sales of the following California Baby product line (hereinafter the "Products") throughout the State of New York and throughout the country:

- California Baby Calming Bubble Bath

- California Baby Natural Pregnancy Nourishing Cream

- California Baby Super Sensitive Shampoo & Body Wash

- California Baby Calming Shampoo & Body Wash

- California Baby Calming Bubble Bath & Body Wash

1

- California Baby Calendula Shampoo & Body Wash

- California Baby Tea Tree & Lavender Shampoo & Body Wash

- California Baby Eucalyptus Ease Shampoo & Body Wash

- California Baby Swimmer's Defense Shampoo & Body Wash

- California Baby Overtired & Cranky Shampoo & Body Wash

- California Baby #supersensitive Shampoo & Body Wash

- California Baby #chillax Shampoo & Body Wash

- California Baby Chamomile & Mint Shampoo & Body Wash

- California Baby Tea Tree & Lavender Hair Conditioner

- California Baby Swimmer's Defense Hair Conditioner

- California Baby Overtired & Cranky Hair Conditioner

- California Baby Calming Hair De-Tangler

- California Baby Calming Jelly Mousse Natural Hair Gel

- California Baby Overtired & Cranky Jelly Mousse Natural Hair Gel

- California Baby Super Sensitive Bubble Bath

- California Baby Calendula Bubble Bath

- California Baby Chamomile & Herbs Bubble Bath

- California Baby Light & Happy Bubble Bath

- California Baby Party! Bubble Bath

- California Baby Calming Everywhere Spritzer

- California Baby Eucalyptus Ease Everywhere Spritzer

- California Baby Overtired & Cranky Everywhere Spritzer

- California Baby I Love You Everywhere Spritzer

2

- California Baby Aloe & Arnica Soothing Spray

- California Baby Natural Bug Blend Bug Repellent

- California Baby Calming Diaper Area Wash

- California Baby Super Sensitive Broad Spectrum SPF 30+ Sunscreen Stick

2.      Defendant manufactures, sells, and distributes the Products using a marketing and advertising campaign centered around claims that appeal to health conscious consumers, i.e., that its Products are "Natural" and/or contain "Natural Cleansers." In fact, the same prominent representations that the Products are "natural" appears on the front label of each of the Products. However, Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products contain synthetic ingredients.

3.      Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products are "Natural" and/or contain "Natural Cleansers" when purchasing the Products.  Plaintiff and Class Members paid a premium for the Products over and above comparable products that did not purport to be "Natural" and/or contain "Natural Cleansers."  Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations that they are "Natural" and/or contain "Natural Cleansers," Plaintiff and Class Members suffered an injury in the amount of the premium paid.

4.      Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350, the consumer protection statutes of all 50 states, and the Magnuson-Moss Warranty Act.  Defendant breached and continue to breach its express and implied warranties regarding the Products.  Defendant has been and continues to be unjustly enriched.  Accordingly, Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period

3

(the "Class Period").

## FACTUAL BACKGROUND

5.      Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products and everyday household products.  Companies such as the Defendant have capitalized on consumers' desire for purportedly "natural products."  Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain synthetic ingredients.  In 2015, sales of natural products grew 9.5% to $180 billion.[1]  Reasonable consumers, including Plaintiffs and Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

6.      Despite the Products containing a number of synthetic ingredients, Defendant markets the Products as being "Natural" and/or containing "Natural Cleansers." The Products' labeling is depicted below:

---

[1] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ*, FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6; *see also* Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025); *Natural living: The next frontier for growth? [NEXT Forecast 2017]*, NEW HOPE NTWORK (December 20, 2016), http://www.newhope.com/beauty-and-lifestyle/natural-living-next-frontier-growth-next-forecast-2017.

4

**California Baby Calming Bubble Bath**



**Synthetic Ingredients:**

Decyl Glucoside
Lauryl Glucoside
Sodium Benzoate

**California Baby Natural Pregnancy Nourishing Cream**



**Synthetic Ingredients:**

Cetyl Alcohol
Stearic Acid
Organic Glycerin (Vegetable)
Tocopherol

**California Baby Super Sensitive Shampoo & Body Wash**



**Synthetic Ingredients:**

Decyl Glucoside
Lauryl Glucoside
Vegetable Glycerine USP
Xanthan Gum
Panthenol
Sodium Benzoate

**California Baby Calming Shampoo & Body Wash**



**Synthetic Ingredients:**

Decyl Glucoside
Lauryl Glucoside
Vegetable Glycerine USP
Xanthan Gum
Panthenol
Sodium Benzoate

**California Baby Calming Bubble Bath & Body Wash**



**Synthetic Ingredients:**

Decyl Glucoside
Lauryl Glucoside
Vegetable Glycerine USP
Xanthan Gum
Sodium Benzoate

California Baby Calendula Shampoo & Body Wash



**Synthetic Ingredients:**

Decyl Glucoside
Lauryl Glucoside
Vegetable Glycerine USP
Xanthan Gum
Panthenol
Sodium Benzoate

**California Baby Tea Tree & Lavender Shampoo & Body Wash**



**Synthetic Ingredients:**

Decyl Glucoside
Lauryl Glucoside
Vegetable Glycerine USP
Xanthan Gum
Sodium Benzoate

**California Baby Eucalyptus Ease Shampoo & Body Wash**



**Synthetic Ingredients:**

Decyl Glucoside
Lauryl Glucoside
Vegetable Glycerine USP
Xanthan Gum
Panthenol
Sodium Benzoate

**California Baby Swimmer's Defense Shampoo & Body Wash**



**Synthetic Ingredients:**

Decyl Glucoside
Lauryl Glucoside
Vegetable Glycerine USP
Xanthan Gum
Sodium Benzoate

**California Baby Overtired & Cranky Shampoo & Body Wash**



**Synthetic Ingredients:**

Decyl Glucoside
Lauryl Glucoside
Vegetable Glycerine USP
Xanthan Gum
Panthenol
Sodium Benzoate

California Baby #supersensitive Shampoo & Body Wash



**Synthetic Ingredients:**

Decyl Glucoside
Lauryl Glucoside
Vegetable Glycerine USP
Xanthan Gum
Sodium Benzoate

15

**California Baby #chillax Shampoo & Body Wash**



**Synthetic Ingredients:**

Decyl Glucoside
Lauryl Glucoside
Vegetable Glycerine USP
Xanthan Gum
Panthenol
Sodium Benzoate

**California Baby Chamomile & Mint Shampoo & Body Wash**



**Synthetic Ingredients:**

Decyl Glucoside
Lauryl Glucoside
Vegetable Glycerine USP
Xanthan Gum
Panthenol
Sodium Benzoate

**California Baby Tea Tree & Lavender Hair Conditioner**



**Synthetic Ingredients:**

Cetyl Alcohol
Vegetable Glycerine USP
Panthenol

**California Baby Swimmer's Defense Hair Conditioner**



**Synthetic Ingredients:**

Cetyl Alcohol
Vegetable Glycerine USP
Panthenol

**California Baby Overtired & Cranky Hair Conditioner**



**Synthetic Ingredients:**

Cetyl Alcohol
Vegetable Glycerine USP
Panthenol

**California Baby Calming Hair De-Tangler**



**Synthetic Ingredients:**

Sodium Benzoate

**California Baby Calming Jelly Mousse Natural Hair Gel**



**Synthetic Ingredients:**

Glycerin USP
Xanthan Gum

**California Baby Overtired & Cranky Jelly Mousse Natural Hair Gel**



**Synthetic Ingredients:**

Glycerin
Xanthan Gum

**California Baby Super Sensitive Bubble Bath**



**Synthetic Ingredients:**

Decyl Glucoside
Lauryl Glucoside
Vegetable Glycerine USP
Sodium Benzoate

**California Baby Calendula Bubble Bath**



**Synthetic Ingredients:**

Decyl Glucoside
Lauryl Glucoside
Vegetable Glycerine USP
Sodium Benzoate

**California Baby Chamomile & Herbs Bubble Bath**



**Synthetic Ingredients:**

Decyl Glucoside
Lauryl Glucoside
Vegetable Glycerine USP
Sodium Benzoate

**California Baby Light & Happy Bubble Bath**



**Synthetic Ingredients:**

Decyl Glucoside
Lauryl Glucoside
Vegetable Glycerine USP
Sodium Benzoate

**California Baby Party! Bubble Bath**



**Synthetic Ingredients:**

Decyl Glucoside
Lauryl Glucoside
Vegetable Glycerine USP
Sodium Benzoate

**California Baby Calming Everywhere Spritzer**



**Synthetic Ingredients:**

Vegetable Glycerine USP

**California Baby Eucalyptus Ease Everywhere Spritzer**



**Synthetic Ingredients:**

Vegetable Glycerine USP

**California Baby Overtired & Cranky Everywhere Spritzer**



**Synthetic Ingredients:**

Vegetable Glycerine USP

**California Baby I Love You Everywhere Spritzer**



**Synthetic Ingredients:**

Vegetable Glycerine USP

**California Baby Aloe & Arnica Soothing Spray**



**Synthetic Ingredients:**

Glycerin USP

**California Baby Natural Bug Blend Bug Repellent**



**Synthetic Ingredients:**

Vegetable Glycerine USP

**California Baby Calming Diaper Area Wash**



**Synthetic Ingredients:**

Vegetable Glycerine USP
Sodium Benzoate

**California Baby Super Sensitive Broad Spectrum SPF 30+ Sunscreen Stick**



**Synthetic Ingredients:**

Titanium Dioxide

7.      Defendant has designed a marketing and advertising campaign centered around

the alleged "Natural" makeup of the Products.  As pictured above, many of the Products' labels

include a cartoon picture of the sun and a green and blue band along the bottom.  Additionally,

the back of the labels state the products are "100% Natural Base" and have "Organic

36

Ingredients."

8.     Each of these labels is pictured on Defendant's website and are viewed by all consumers who purchase the Products online.[2]  Defendant's website further emphasizes the "natural" aspects of the Products by stating that the Products have "Plant-based Ingredients" and "No synthetic fragrances."

9.     Defendant's  representations that the Products are "Natural" and/or contain "Natural Cleansers" is false, misleading, and deceptive because the Products contain multiple ingredients that are, as explained below, synthetic.

    a.  **Lauryl Glucoside** is a synthetic surfactant or dispersant.  It is synthesized by reacting an alcohol or mixture of alcohols with a cyclic form of glucose or glucose polymers.[3]

    b.  **Panthenol** is a synthetic compound, produced by adding propanolamine to optically active alpha, gamma-dihydroxy-beta,beta-dimethylbutyrolacton, such as by combining 3-amino-1-propanolamine with the lactone of 2,4-dihydroxy-3,3-dimethyl butyric acid or the panthotheinc lactone of 2,4-dihydroxy-3,3-dimethyl butyric acid.

    c.  **Decyl Glucoside** is a synthetic ingredient obtained by the condensation of decyl alcohol and glucose. [4]

    d.  **Tocopherol** is a synthetic, inert ingredient used pre and post-harvest as an ingredient in pesticide formulations applied to growing crops or to raw agricultural commodities after harvest. *See* 40 C.F.R. §180.910.

---

[2] https://www.californiababy.com/collections/shampoo-bodywashes
[3] http://www.ewg.org/skindeep/ingredient/703445/LAURYL_GLUCOSIDE/.
[4] http://www.newdirections.com.au/articles/images/Decyl-Glucoside-and-Other-Alkyl-Glucosides-as-Used-in-Cosmetics.pdf

e. **Glyceryl Stearate (Stearic Acid)** is a mixture of variable proportions of glyceryl monostearate, glyceryl monopalmitate, and glyceryl esters of fatty acids present in commercial stearic acid. It is recognized by federal regulations as synthetic. *See* 7 C.F.R. § 205.605(b).

f. **Xanthan Gum** is a polysaccharide derived from the fermentation of sugars by anthomonas campeseri bacterium and purification using isopropyl alcohol. It is listed as a synthetic ingredient by federal regulation and is typically used as a thickening or stabilizing agent in beverages and as emulsifiers in salad dressings. *See* 7 C.F.R. § 205.605(b). A 2012 article in the Journal of Pediatrics noted that the U.S. Food & Drug Administration issued warnings that products containing xanthan gum have been linked to illness and death in infants.[5]

g. **Titanium Dioxide** is a color additive that is synthetically prepared Ti02, free from admixture with other substances. [6]

h. **Cetyl Alcohol** is a synthetic flavoring substance and adjuvant. *See* 21 C.F.R. §172.515. Cetyl Alcohol—also known as 1-Hexadecanol—is produced through "[c]atalytic hydrogenation of the triglycerides obtained from coconut oil or tallow; oxidation of a chain growth product of ethylene oligomerized on a triethylaluminum catalyst."[7] Because Cetyl Alcohol is formulated or manufactured by a chemical process or by a process that chemically changes a

---

[5] Jennifer Beal, MPH et al., *Late Onset Necrotizing Enterocolitis in Infants Following Use of a Xanthan Gum-Containing Thickening Agent*, 161 THE JOURNAL OF PEDIATRICS 2, 354 (2012).
[6] http://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfcfr/cfrsearch.cfm?fr=73.575
[7] NAT'L CTR. FOR BIOTECHNOLOGY INFO., U.S. DEP'T OF HEALTH & HUMAN SERVS., Open Chemistry Database: 1-Hexadecanol: 10.2 Methods of Manufacture PUBCHEM.NCBI.NLM.NIH.GOV.

substance extracted from naturally occurring plant, animal, or mineral sources, a reasonable consumer would consider it synthetic.

i.   **Sodium Benzoate** is a synthetic preservative.[8]  Sodium benzoate is produced by the neutralization of benzoic acid with sodium hydroxide, or by adding benzoic acid to a hot concentrated solution of sodium carbonate until effervescence ceases.  The solution is then evaporated, cooled and allowed to crystalize or evaporate to dryness, and then granulated.  It does not occur naturally.[9]  Sodium benzoate has been shown to cause DNA damage and chromosomal aberrations.[10]  When sodium benzoate combines with ascorbic acid (an ingredient common in many food products) the two substances can react to produce benzene, which is a highly toxic carcinogen.  Because sodium benozate is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, a reasonable consumer would consider it synthetic.

j.   **Glycerin (Vegetable**) is a factory-produced texturizer that is created by complex processing.  It is recognized by federal regulations as synthetic.  *See* 7 C.F.R. § 205.605(b).  It is commonly used as a filler and thickening agent.  It requires multiple processing steps in an industrial environment to create Glycerin.  Therefore, it cannot be described as "natural."  A technical evaluation report compiled by the USDA AMS Agricultural Analytics Division for the USDA

---

[8] http://www.ewg.org/skindeep/ingredient/705989/SODIUM_BENZOATE/;
http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm274535.htm.
[9] 21 C.F.R. § 184.1733; *see also* NAT'L CTR. FOR BIOTECHNOLOGY INFO., U.S. DEP'T OF HEALTH & HUMAN SERVS., Open Chemistry Database: Sodium Benozate: 10.2 Methods of Manufacture PUBCHEM.NCBI.NLM.NIH.GOV.
[10] N. Zengin et al., *The Evaluation of the Genotoxicity of Two Food Preservatives: Sodium Benzoate and Potassium Benzoate*, FOOD AND CHEMICAL TOXICOLOGY 763, 764-68 (2011).

National Organic Program explains that Glycerin is "produced by a hydrolysis of fats and oils" and is listed in the USDA Organic Program's National List as a "synthetic nonagricultural (nonorganic) substance." The same report lists several methods of producing Glycerin, each of which involve numerous steps that include the use of high temperatures and pressure and purification to get an end product.

| Table 2 Processes for producing glycerin by hydrolysis of fats and oils[11] | |
|---|---|
| Lemmens Fryer's Process | Oil or fat is subjected in an autoclave to the conjoint action of heat and pressure (about 100 PSI) in the presence of an emulsifying and accelerating agent, e.g. zinc oxide or hydroxide (sodium hydroxide can be substituted) for about eight hours. The strong solution of glycerin formed is withdrawn and replaced by a quantity of hot, clean and preferably distilled water equal to about one third to one fourth of the weight of the original charge of oil or fat and treatment continued for an additional four hours. The dilute glycerin obtained from the latter part of the process is drawn off and used for the initial treatment of the further charge of oil or fat. |
| Budde and Robertson's Process | The oils or fats are heated and mechanically agitated with water and sulphuric acid gas, under pressure in a closed vessel or autoclave. The advantage claimed for the process are that the contents of the vessel are free from foreign matter introduced by reagents and need no purification; that the liberated glycerin is in the form of a pure and concentrated solution; that no permanent emulsion is formed and that the fatty acids are not discolored. |
| Ittner's Process | Coconut oil is kept in an autoclave in the presence of water at 70 atmospheres pressure and 225-245oC temperature and split into fatty acids and glycerin, both being soluble under these conditions in water. The glycerin solution separates in the bottom of the autoclave. The aqueous solution contains at the end of the splitting process more than 30 percent glycerin. |
| Continuous High Pressure Hydrolysis | In this process a constant flow of fat is maintained flowing upward through an autoclave column tower against a downward counterflow of water at a pressure of 600 PSI maintained at temperature of 480-495oF. Under these conditions, the fat is almost completely miscible in water and the hydrolysis take place in a very short time. The liberated fatty acids, washed free |

---

[11] https://www.ams.usda.gov/sites/default/files/media/Glycerin%20Petition%20to%20remove%20TR%202013.pdf

| | of glycerin by the downward percolating water, leave the top of the column and pass through a flash tank while the liberated glycerin dissolves in the downward flow of water and is discharged from the bottom of the tower into the sweet-water storage tank. |
| --- | --- |

10.     Whether Defendant's labeling of the Products as "Natural" and/or "Natural Cleansers" is deceptive is judged by whether it would deceive or mislead a reasonable person. To assist in ascertaining what a reasonable consumer believes the term natural means, one can look to the regulatory agencies for their guidance.

11.     In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural). In accordance with this decision tree, a substance is natural—as opposed to synthetic—if: (a) it is manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter. **(Exhibit A).**

12.     Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources . . .". 7 U.S.C. § 6502 (21).

13.     Surveys and other market research, including expert testimony Plaintiff intends to introduce, will demonstrate that the term "natural" is misleading to a reasonable consumer because the reasonable consumer believes that the term "natural," when used to describe goods such as the Products, means that the goods are free of synthetic ingredients.

14.     Consumers lack the meaningful ability to test or independently ascertain or verify

whether a product is natural, especially at the point of sale. Consumers would not know the true

nature of the ingredients merely by reading the ingredients label.

15.     Discovering that the ingredients are not natural and are actually synthetic requires

a scientific investigation and knowledge of chemistry beyond that of the average consumer. That

is why, even though the ingredients listed above are identified on the back of the Products'

packaging in the ingredients listed, the reasonable consumer would not understand – nor are they

expected to understand - that these ingredients are synthetic.

16.     Moreover, the reasonable consumer is not expected or required to scour the

ingredients list on the back of the Products in order to confirm or debunk Defendant's prominent

front-of-the-Products claims, representations, and warranties that the Products are "Natural"

and/or contain "Natural Cleansers."

17.     Defendant did not disclose that the above listed ingredients are synthetic

ingredients. A reasonable consumer understands Defendant's "Natural" and/or contain "Natural

Cleansers" claims to mean that the Products are "Natural" and/or contain "Natural Cleansers"

and do not contain synthetic ingredients.

18.     Defendant has thus violated, *inter alia*,  NY General Business Law § 392-b by: a)

putting upon an article of merchandise, bottle, wrapper, package, label or other thing, containing

or covering such an article, or with which such an article is intended to be sold, or is sold, a false

description or other indication of or respecting the kind of such article or any part thereof; and b)

selling or offering for sale an article, which to its knowledge is falsely described or indicated

upon any such package, or vessel containing the same, or label thereupon, in any of the

particulars specified.

19.     Consumers rely on label representations and information in making purchasing

decisions.

20.      The marketing of the Products as "Natural" and/or contain "Natural Cleansers" in a prominent location on the labels of all of the Products, throughout the Class Period, evidences Defendant's awareness that "Natural" and/or contain "Natural Cleansers" claims are material to consumers.

21.      Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

22.      Plaintiff and the Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.

23.      Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class members.

24.      In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products labeled "Natural" and/or contain "Natural Cleansers" over comparable products not so labeled.

25.      As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class members in that they:

> a. Paid a sum of money for Products that were not what Defendant represented;
>
> b. Paid a premium price for Products that were not what Defendant represented;

    c.  Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted; and

    d.  Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

26.    Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiff and the Class members would not have been willing to purchase the Products.

27.    Plaintiff and the Class members paid for Products that were "Natural" and/or contain "Natural Cleansers" but received Products that were not "Natural" and/or contain "Natural Cleansers." The Products Plaintiff and the Class members received were worth less than the Products for which they paid.

28.    Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing a "Natural" and/or contain "Natural Cleansers" label.

29.    Plaintiff and the Class members all paid money for the Products. However, Plaintiff and the Class members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## JURISDICTION AND VENUE

30.    This Court has subject matter jurisdiction under the Class Action Fairness Act, 28

U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the State of New York, Defendant California Natural Living, Inc. is a citizen of the State of California; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

31.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

32.     Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the State of New York. A substantial part of the events or omissions giving rise to the classes' claims occurred in this District.

## PARTIES

### Plaintiff

33.     Plaintiff is an individual consumer who, at all times material hereto, was a citizen of New York State.  During the Class Period Plaintiff purchased California Baby Calendula Shampoo & Body Wash, California Baby Natural Pregnancy Nourishing Cream, and California Baby Calming Bubble Bath online and/or from a retail store in New York State.  The products purchased by the Plaintiff are substantially similar and sufficiently similar to the products within Defendant's product portfolio that Plaintiff did not purchase (i.e. each of Defendant's Products set forth herein in paragraph 1). In fact, the products Plaintiff purchased contain the same "natural" representation as each of the other Products.

34.     The packaging of the Products Plaintiff purchased contained the representation that they were "Natural" and/or contain "Natural Cleansers." Plaintiff purchased the products because she believed they were "Natural" and/or contain "Natural Cleansers" as represented by

45

Defendant on the label. Plaintiff did not discover that the products neither "Natural" and/or contain "Natural Cleansers" until after she purchased the products. Had Plaintiff known the truth—that the representations she relied upon in purchasing the products were false, misleading, and deceptive—she would not have purchased them.

35.     Plaintiff believes that products that are labeled "Natural" and/or contain "Natural Cleansers" do not contain synthetic ingredients. Plaintiff believes a synthetic ingredient is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources. If the Products were actually "Natural" and/or contain "Natural Cleansers," as represented on the Products' label, Plaintiff would purchase the Products in the immediate future.

36.     Had Defendant not made the false, misleading, and deceptive representation that the Products were "Natural" and/or contain "Natural Cleansers," Plaintiff would not have been willing to pay the same amount for the Products, and, consequently, she would not have been willing to purchase the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products. Since the Products Plaintiff received were worth less than the Products for which she paid, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

37.     Plaintiff continues to desire to purchase "Natural" products, and regularly visits retail locations where such products are sold, including Defendant's Products. If Plaintiff knew the Products' labels were truthful and non-misleading, she would continue to purchase the Products in the future. At present, however, Plaintiff cannot purchase the Products because she has no way to know that the labeling of the Products is, and will be, truthful and non-misleading. If the Products were actually "Natural," as represented on the Products' labels, Plaintiff would

purchase the Products in the immediate future.

**Defendant**

33.     Defendant California Natural Living, Inc. is a corporation with its principal place of business in Los Angeles, California. Defendant manufactures, markets, advertises and distributes the Products throughout the United States.  Defendant created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Products.

## CLASS ALLEGATIONS

34.     Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

35.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

36.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of New York at any time during the Class Period (the "New York Subclass").

37.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

38.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

39.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is

impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

40.     Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a.  Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

    b.  Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

    c.  Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Products;

    d.  Whether Defendant's false and misleading statements concerning its Products were likely to deceive the public;

    e.  Whether Plaintiff and the Class are entitled to injunctive relief; and

    f.  Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

41.     Typicality: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

42.     Adequacy: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent; her consumer fraud

claims are common to all members of the Class and she has a strong interest in vindicating her rights; she has retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action.

43.    <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

44.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a.  The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

    b.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

    c.  When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

    d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.  It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's uniform false advertising to purchase its Products as being "Natural" and/or containing "Natural Cleansers."

45.   Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**INJUNCTIVE CLASS RELIEF**

46.   Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.  Here, Defendant has engaged in conduct resulting in misleading consumers about ingredients in its Products.  Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct. Plaintiff would purchase the Products again if the ingredients were changed so that they indeed were "Natural" and/or contain "Natural Cleansers."

50

47.     The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

    a.   <u>Numerosity</u>: Individual joinder of the injunctive Class Members would be wholly impracticable.  Defendant's Products have been purchased by thousands of people throughout the United States;

    b.   <u>Commonality</u>: Questions of law and fact are common to members of the Class. Defendant's misconduct was uniformly directed at all consumers.  Thus, all members of the Class have a common cause against Defendant to stop its misleading conduct through an injunction.  Since the issues presented by this injunctive Class deal exclusively with Defendant's misconduct, resolution of these questions would necessarily be common to the entire Class.  Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

        i.   Resolution of the issues presented in the 23(b)(3) class;

        ii.   Whether members of the Class will continue to suffer harm by virtue of Defendant's deceptive product marketing and labeling; and

        iii.   Whether, on equitable grounds, Defendant should be prevented from continuing to deceptively mislabel its Products as being "Natural" and/or containing "Natural Cleansers."

    c.   <u>Typicality</u>: Plaintiff's claims are typical of the claims of the injunctive Class because her claims arise from the same course of conduct (i.e. Defendant's deceptive and misleading marketing, labeling, and advertising practices).  Plaintiff

51

is a typical representative of the Class because, like all members of the injunctive

Class, she purchased Defendant's Products which were sold unfairly and

deceptively to consumers throughout the United States.

d.  <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests

of the injunctive Class.  Her consumer protection claims are common to all

members of the injunctive Class and she has a strong interest in vindicating her

rights.  In addition, Plaintiff and the Class are represented by counsel who is

competent and experienced in both consumer protection and class action

litigation.

48.     The injunctive Class is properly brought and should be maintained as a class

action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class

Members on grounds generally applicable to the entire injunctive Class.  Certification under Rule

23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies

generally to the injunctive Class (i.e. Defendant has marketed tits Products using the same

misleading and deceptive labeling to all of the Class Members).  Any final injunctive relief or

declaratory relief would benefit the entire injunctive Class as Defendant would be prevented

from continuing its misleading and deceptive marketing practices and would be required to

honestly disclose to consumers the nature of the contents of its Products. Plaintiff would

purchase the Products again if the ingredients were changed so that they indeed were "Natural"

and/or contain "Natural Cleansers"

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and New York Subclass Members)**

49.     Plaintiff repeats and realleges each and every allegation contained in all the

foregoing paragraphs as if fully set forth herein.

50.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

51.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting the Products.

52.     There is no adequate remedy at law.

53.     Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

54.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as being "Natural" and/or containing "Natural Cleansers" —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

55.     Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for products that were—contrary to Defendant's representations— not "Natural" and/or contain "Natural Cleansers." Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

56.     Defendant's advertising and Products' packaging and labeling induced the

53

Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

57.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

59.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiff and the New York Subclass Members)

60.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

61.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

62.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or

54

usual . . .

63.     Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products are "Natural" and/or contain "Natural Cleansers."

64.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the Products which were—contrary to Defendant's representations—not "Natural" and/or contain "Natural Cleansers." Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

65.     Defendant's advertising, packaging and products' labeling induced the Plaintiff and the New York Subclass Members to buy Defendant's Products.

66.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

67.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

68.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the Products' packaging and labeling.

69.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

70.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by

means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**VIOLATION OF STATE CONSUMER PROTECTION STATUTES**
**(On Behalf of Plaintiff and All Class Members)**

71.      Plaintiff repeats and realleges each and every allegation contained in all the
foregoing paragraphs as if fully set forth herein.

72.      Plaintiff and Class Members have been injured as a result of Defendant's
violations of the following state consumer protection statutes, which also provide a basis for
redress to Plaintiff and Class Members based on Defendant's fraudulent, deceptive, unfair and
unconscionable acts, practices and conduct.

73.      Defendant's conduct as alleged herein violates the consumer protection, unfair
trade practices and deceptive acts laws of each of the following jurisdictions:

a.      **Alaska:** Defendant's practices were and are in violation of Alaska's Unfair Trade
Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

b.      **Arizona:**  Defendant's practices were and are in violation of Arizona's Consumer
Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq*.

c.      **Arkansas:**  Defendant's practices were and are in violation of Arkansas Code
Ann. § 4-88-101, *et seq.*

d.      **California:**  Defendant's practices were and are in violation of California
Consumer Legal Remedies Act, Civil Code § 1750, *et seq*., and California's
Unfair Competition Law, California Business and Professions Code § 17200, *et
seq*., and California's False Advertising Law, California Business and Professions
Code § 17500, *et seq*.

e.      **Colorado**: Defendant's practices were and are in violation of Colorado's

Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

f.   **Connecticut:**  Defendant's practices were and are in violation of Connecticut's Gen. Stat. § 42-110a, *et seq.*

g.   **Delaware:**  Defendant's practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

h.   **District of Columbia:**  Defendant's practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

i.   **Florida:**  Defendant's practices were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

j.   **Hawaii:**  Defendant's practices were and are in violation of the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev. Stat. § 480-2.

k.   **Idaho:**  Defendant's practices were and are in violation of Idaho's Consumer Protection Act, Idaho Code Ann. § 48-601, *et seq.*

l.   **Illinois:**  Defendant's acts and practices were and are in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

m.   **Indiana:**  Defendant's practices were and are in violation of Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

n.   **Kansas:**  Defendant's practices were and are in violation of Kansas's Consumer Protection Act, Kat. Stat. Ann. § 50-623, *et seq.*

o.   **Kentucky:**  Defendant's practices were and are in violation of Kentucky's

Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

p.   **Maine:**  Defendant's practices were and are in violation of the Maine Unfair

Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq.* and 10 Me.

Rev. Stat. Ann. § 1101, *et seq.*

q.   **Maryland:**  Defendant's practices were and are in violation of Maryland's

Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq.*

r.   **Massachusetts:**  Defendant's practices were unfair and deceptive acts and

practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen.

Laws ch. 93A, § 2.

s.   **Michigan:**  Defendant's practices were and are in violation of Michigan's

Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*

t.   **Minnesota:**  Defendant's practices were and are in violation of Minnesota's

Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the

Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

u.   **Missouri:**  Defendant's practices were and are in violation of Missouri's

Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

v.   **Nebraska:**  Defendant's practices were and are in violation of Nebraska's

Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform

Deceptive Trade Practices Act, § 87-302, *et seq.*

w.   **Nevada:**  Defendant's practices were and are in violation of Nevada's Deceptive

Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

x.   **New Hampshire:**  Defendant's practices were and are in violation of New

Hampshire's Regulation of Business Practices for Consumer Protection, N.H.

58

Rev. Stat. Ann. § 358-A:1, *et seq.*

y.   **New Jersey:** Defendant's practices were and are in violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

z.   **New Mexico:** Defendant's practices were and are in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

aa.   **North Carolina:** Defendant's practices were and are in violation of North Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et seq.*

bb.   **North Dakota:** Defendant's practices were and are in violation of North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-01, *et seq.*

cc.   **Ohio:** Defendant's practices were and are in violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio's Deceptive Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq.*

dd.   **Oklahoma:** Defendant's practices were and are in violation of Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.*, and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

ee.   **Oregon:** Defendant's practices were and are in violation of Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

ff.   **Pennsylvania:** Defendant's practices were and are in violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq.*

gg.   **Rhode Island:** Defendant's practices were and are in violation of Rhode Island's

Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

hh. **South Dakota:** Defendant's practices were and are in violation of South

Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified

Laws § 37-24-1, *et seq.*

ii. **Texas:** Defendant's practices were and are in violation of Texas' Deceptive

Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41,

*et seq.*

jj. **Utah:** Defendant's practices were and are in violation of Utah's Consumer Sales

Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising

Law, Utah Code Ann. § 13-11a-1, *et seq.*

kk. **Vermont:** Defendant's practices were and are in violation of Vermont's

Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

ll. **Washington:** Defendant's practices were and are in violation of Washington

Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq.*

mm. **West Virginia:** Defendant's practices were and are in violation of West

Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et*

*seq.*

*nn.* **Wisconsin:** Defendant's practices were and are in violation of Wisconsin's

Consumer Act, Wis. Stat. §421.101, *et seq.*

oo. **Wyoming:** Defendant's practices were and are in violation of Wyoming's

Consumer Protection Act, Wyo. Stat. Ann. §40-12-101, *et seq.*

74.     Defendant violated the aforementioned states' unfair and deceptive acts and

practices laws by representing that the Products are "Natural" and/or contain "Natural

Cleansers."

75.     Contrary to Defendant's representations, the Products are not "Natural" and/or contain "Natural Cleansers."

76.     Defendant's misrepresentations were material to Plaintiff's and Class Members' decision to pay a premium for the Products.

77.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

78.     As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members paid a premium for the Products.

79.     As a result of Defendant's violations, Defendant has been unjustly enriched.

80.     Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

## FOURTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY
### (On Behalf of Plaintiff and All Class Members)

81.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

82.     Defendant provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are "Natural" and/or contain "Natural Cleansers."

83.     The above affirmations of fact were not couched as "belief" or "opinion," and

were not "generalized statements of quality not capable of proof or disproof."

84.     These affirmations of fact became part of the basis for the bargain and were material to the Plaintiff's and Class Members' transactions.

85.     Plaintiff and Class Members reasonably relied upon the Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

86.     Within a reasonable time after they knew or should have known of Defendant's breach, Plaintiff, on behalf of herself and Class Members, placed Defendant on notice of its breach, giving Defendant an opportunity to cure its breach, which they refused to do.

87.     Defendant breached the express warranty because the Products are not "Natural" and/or contain "Natural Cleansers" because they contain synthetic ingredients.

88.     Defendant thereby breached the following state warranty laws:

      a.     Code of Ala. § 7-2-313;

      b.     Alaska Stat. § 45.02.313;

      c.     A.R.S. § 47-2313;

      d.     A.C.A. § 4-2-313;

      e.     Cal. Comm. Code § 2313;

      f.     Colo. Rev. Stat. § 4-2-313;

      g.     Conn. Gen. Stat. § 42a-2-313;

      h.     6 Del. C. § 2-313;

      i.     D.C. Code § 28:2-313;

      j.     Fla. Stat. § 672.313;

      k.     O.C.G.A. § 11-2-313;

l.      H.R.S. § 490:2-313;

m.      Idaho Code § 28-2-313;

n.      810 I.L.C.S. 5/2-313;

o.      Ind. Code § 26-1-2-313;

p.      Iowa Code § 554.2313;

q.      K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.      II. O.R.C. Ann. § 1302.26;

jj.      12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.      13 Pa. Rev. Stat. § 72-3130;

mm.   R.I. Gen. Laws § 6A-2-313;

nn.     S.C. Code Ann. § 36-2-313;

oo.     S.D. Codified Laws, § 57A-2-313;

pp.     Tenn. Code Ann. § 47-2-313;

qq.     Tex. Bus. & Com. Code § 2.313;

rr.      Utah Code Ann. § 70A-2-313;

ss.      9A V.S.A. § 2-313;

tt.      Va. Code Ann. § 59.1-504.2;

uu.     Wash. Rev. Code Ann. § 6A.2-313;

vv.     W. Va. Code § 46-2-313;

ww.    Wis. Stat. § 402.313;

xx.     Wyo. Stat. § 34.1-2-313.

89.     As a direct and proximate result of Defendant's breach of express warranty,
Plaintiff and Class Members were damaged in the amount of the price they paid for the Products,
in an amount to be proven at trial.

90.     On June 2, 2017, Plaintiff mailed a Pre-Suit Notice letter to Defendant. Attached
to the Pre-suit Notice Letter was a copy of a draft complaint which stated that "Defendant
breached the express warranty because the Product does not contain 'Natural Elements' . . . [this
violates] N.Y. U.C.C. Law § 2-313."

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSON-MOSS**
**WARRANTY ACT, 15 U.S.C. § 2301 *et seq.***
**(On Behalf of Plaintiff and All Class Members)**

91.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

92.     Plaintiff brings this claim individually and on behalf of all members of the Class. Upon certification, the Class will consist of more than 100 named Plaintiffs.

93.     The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

94.     The Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

95.     Plaintiff and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

96.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

97.     Defendant represented in writing that the Products are "Natural" and/or contain "Natural Cleansers."

98.     These statements were made in connection with the sale of the Products and relate to the nature of the Products and affirm and promise that the Products are as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

65

99.     As alleged herein, Defendant breached the written warranty by selling consumers Products that are not "Natural" and/or contain "Natural Cleansers."

100.    The Products do not conform to the Defendant's written warranty and therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.  Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its practices and to comply with consumer protection statutes nationwide, including New York consumer protection laws;

(c) Awarding monetary damages, including treble damages;

(d) Awarding punitive damages;

(e) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(f) Granting such other and further relief as the Court may deem just and proper.

Dated:  February 5, 2017

THE SULTZER LAW GROUP P.C.

Jason P. Sultzer /s/

By:  _____
Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Adam Gonnelli, Esq.
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com


HALUNEN LAW
Melissa S. Weiner, Esq. (*pro hac vice forthcoming*)
Amy E. Boyle (*admission forthcoming*)
80 South Eighth Street, Suite 1650
Minneapolis, MN 55402
Tel: (612) 605-4098
Fax: (612) 605-4099
weiner@halunenlaw.com
boyle@halunenlaw.com


SHOOP A PROFESSIONAL LAW CORPORATION
David R. Shoop, Esq. (*pro hac vice forthcoming*)
350 S. Beverly Dr., Suite 330
Beverly Hills, CA 90212
Tel: (310) 277-1700
Fax: (310) 277-8500
david.shoop@shooplaw.com

*Counsel for Plaintiff and the Class*

67