UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAMELA SUAREZ, individually on behalf of
herself and all others similarly situated,

             Plaintiff,

    v.

CALIFORNIA NATURAL LIVING, INC. d/b/a
CALIFORNIA BABY+ KIDS®,

          Defendant.

Case No. 7:17-CV-09847-VB-PD

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. PLAINTIFF'S ALLEGATIONS ...........................................................................1

III. ARGUMENT...........................................................................................................3

A. THIS COURT LACKS PERSONAL JURISDICTION WITH RESPECT TO CLAIMS ASSERTED ON BEHALF OF PUTATIVE CLASS MEMBERS LOCATED OUTSIDE NEW YORK FOR PURCHASES OUTSIDE NEW YORK ..3

B. PLAINTIFF LACKS STANDING TO SEEK RELIEF REQUESTED ......................5

(1) Plaintiff Lacks Standing to Seek Prospective Injunctive Relief .....................5

(2) Plaintiff Lacks Standing as to Products She Did Not Purchase ....................7

(3) Plaintiff Lacks Standing to Assert Claims Based on Other States' Statutes...............8

C. EACH OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE SHE FAILS TO ALLEGE SUFFICIENT FACTS TO STATE A CLAIM FOR RELIEF BY FAILING TO PLAUSIBLY ALLEGE HOW THE NATURALLY-DERIVED INGREDIENTS ARE "UNNATURAL" ...................................................11

(1) There is no legally enforceable definition or standard for use of the word 'natural" in the context of manufactured cosmetics........................................................12

(2) Plaintiff's allegations do not support her contention the products are mislabeled as 'natural' ...................................................................................................15

D. MANY OF THE CHALLENGED PHRASES ARE NON-ACTIONABLE PUFFERY...............................................................................................................20

E. PLAINTIFF'S GBL SECTION 349 CLAIM (Count 1) FAILS; PLAINTIFF DOES NOT ALLEGE DECEPTIVE ACTS OR PRACTICE .................................................21

F. PLAINTIFF'S GBL SECTION 350 CLAIM (Count 2) FAILS; SHE FAILS TO ALLEGE A LIKELIHOOD OF DECEPTION AS A MATTER OF LAW .............22

G. THE BREACH OF EXPRESS WARRANTY CLAIM (Count 4) FAILS .................23

H. THE MAGNUSON-MOSS WARRANTY ACT CLAIM (Count 5) FAILS .............24

I. CONCLUSION ...................................................................................................25

## TABLE OF AUTHORITIES

**CASES**

*Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*
  752 N.Y.S.2d 400(2d Dep't 2002) ............................................................ 22

*Arthur Click Leasing, Inc. v. William J. Petzold, Inc.*
  858 N.Y.S.2d 405 (3d Dep't 2008) ............................................................ 23

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ............................................................................ 11

*Astiana v. Kashi Co.*
  291 F.R.D. 493 (S.D. Cal. 2013) .............................................................. 19

*Avola v. La.-Pac. Corp.*
  991 F. Supp. 2d 381 (E.D.N.Y. 2013) ........................................................ 20

*Bowling v. Johnson & Johnson*
  65 F.Supp.3d 371 (S.D.N.Y. 2014) ........................................................... 25

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*
  137 S. Ct. 1773 (2017) ....................................................................... 3, 4

*Brown v. Lockheed Martin Corp.*
  814 F. 3d 619 (2d Cir. 2016) .................................................................... 4

*Buonasera v, The Honest Company, Inc.*
  208 F.Supp.3d 555 (S.D.N.Y. Sept. 23, 2016) ............................................. 5, 6

*Chin v. Chrysler Corp.*
  182 F.R.D. 448 (D.N.J. 1998) .................................................................. 10

*City of Los Angeles v. Lyons*
  461 U.S. 95 (1983) ............................................................................... 5

*Comer v. Cisneros*
  7 F.3d 775 (2d Cir. 1994) ........................................................................ 9

*Conroy v. The Dannon Company, Inc.*
  No. 12-cv-6901 (VB), 2013 WL 4799164, *2 (S.D.N.Y. May 9, 2013) ................. 11

*Daimler AG v. Bauman*
  134 S. Ct. 746 (2014) ....................................................................... 3, 4

*DeAngelis v. Timberpeg E., Inc.*
  858 N.Y.S.2d 410 (3d Dep't 2008) ....................................................................... 22

*DiBartolo v. Abbott Labs.*
  914 F.Supp.2d 601 (S.D.N.Y. 2012) .................................................................... 23

*DiMuro v. Clinique Labs., LLC*
  572 Fed. Appx. 27 (2d Cir. 2014) ........................................................................ 7

*Ebin v. Kangadis Food, Inc.*
  2013 WL 6504547 (S.D.N.Y. Dec. 19, 2013) ...................................................... 23

*Elkind v. Revlon*
  No. 14CV2484, 2015 WL 2344134, at *13 (E.D.N.Y. May 14, 2015) ................... 20

*Fink v. Time Warner Cable*, 810 F. Supp. 2d 633 (S.D.N.Y. 2011) ............................ 20

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*
  862 F. Supp. 2d 322 (S.D.N.Y. 2012) .................................................................. 9

*Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs.*
  528 U.S. 167 (2000) ............................................................................................... 5

*Glazer v. LoPreste*
  717 N.Y.S.2d 256 (2d Dep't 2000) ....................................................................... 22

*Goldemberg v. Johnson & Johnson,*
  317 F.R.D. 374 (S.D.N.Y. 2016) ...................................................................... 7, 23

*Goodyear Dunlop Tires Operations, S.A. v. Brown*
  564 U.S. 915 (2011) ............................................................................................... 3

*Hairston v. South Beach Beverage Co.*
  No. cv-12-1429-JFW, 2012 U.S.Dist. LEXIS 74279, at *18 (C.D.Cal. May 18, 2012) .......... 25

*Harding v. Tambrands Inc.*
  165 F.R.D. 623 (D. Kan. 1996) ............................................................................. 10

*Hart v. BHH, LLC*, No. 15cv4804, 2016 WL 2642228, at *3 (S.D.N.Y. May 5, 2016) ............... 7

*Hubbard v. General Motors Corp.*
  No. 95CV4362, 1996 WL 274018, at *6 (S.D.N.Y. May 22, 1996) ...................... 23

*In re Avon Anti–Aging Skincare Creams & Products Mktg. & Sales Practices Litig.* ....................
  No. 13–CV–150 JPO, 2015 WL 5730022, at *8, (S.D.N.Y. Sept. 30, 2015) ............................ 6

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*
701 F. Supp. 2d 356 (E.D.N.Y. 2010) ............................................................ 9, 10

*In re ConAgra Foods, Inc.*
908 F.Supp.2d 1090 (C.D. Cal. 2012) ............................................................ 25

*In re Dental Supplies Antitrust Litig.*
No. 16-CV-696, 2017 WL 4217115, at *1 (E.D.N.Y. Sept. 20, 2017) ..................... 4

*In re Ditropan XL Antitrust Litig.*
529 F.Supp.2d 1098 (N.D. Cal. 2007) ............................................................ 10

*In re Flash Memory Antitrust Litig.*
643 F.Supp.2d 1133 (N.D. Cal. 2009) ............................................................ 10

*In re Frito-Lay North America, Inc. All Natural Litigation*
No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013) ........... 25

*In re Grand Theft Auto Video Game Consumer Litig.*
251 F.R.D. 139 (S.D.N.Y. 2008) ................................................................... 9

*In re Sling Media Slingbox Advert. Litig.*
202 F. Supp. 3d 352 (S.D.N.Y. 2016) ............................................................. 9

*Johnson v. Nextel Commc'ns Inc.*
780 F.3d 128 (2d Cir.2015)........................................................................... 9

*Jones v. Conagra Foods, Inc.,*
912 F.Supp.2d 889 (N.D.Cal. 2012) ............................................................... 24

*Jones v. ConAgra Foods, Inc.*
No. 12-cv-1633, 2014 WL 2702726, *15 (N.D. Cal. June 13, 2014)...................... 11

*Jovel v. i–Health, Inc.*
No. 12 Civ. 5614, 2013 WL 5437065, at *10 (E.D.N.Y. Sept. 27, 2013)................. 7

*Kane v. Chobani, Inc.*
No. 12–CV–2425, 2013 WL 3703981, at *19 (N.D.Cal. July 12, 2013) ................ 25

*Koenig v. Boulder Brands, Inc.*
995 F. Supp. 2d 274 (S.D.N.Y. 2014) ............................................................ 23

*Lewis v. Casey*
518 U.S. 343 (1996)................................................................................. 5, 8

*Lipton v. Nature Co.*
   71 F.3d 464 (2d Cir. 1995)............................................................... 20

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992)....................................................................... 5

*Mahon v. Ticor Title Ins. Co.*
   683 F.3d 59 (2d Cir. 2012)................................................................ 9

*Marcus v. AT & T*
   138 F.3d 46(2d Cir.1998)................................................................ 11

*Maurizio v. Goldsmith*
   230 F.3d 518 (2d Cir. 2000)............................................................. 21

*Mayfield v. Asta Funding, Inc.*
   95 F. Supp. 3d 685 (S.D.N.Y. 2015) ................................................. 3

*McMahon v. Take-Two Interactive Software, Inc.*
   No. EDCV 13-02032-VAP, 2014 WL 324008 at *2 (C.D.Cal. Jan. 29, 2014)..................... 15

*Assoc. of Molecular Pathology v Myriad Genetics, Inc.*
   569 U.S. 576 (2013)...................................................................... 14

*Moses v. Citicorp Mortg., Inc.*
   982 F.Supp. 897(E.D.N.Y.1997........................................................... 21

*Mosley v. Vitalize Labs, LLC*
   Nos. 13–cv–2470 (RJD) and 14–cv–4474 (RJD), 2015 WL 5022635, at *9
   (E.D.N.Y. Aug. 24, 2015)................................................................ 10

*Nicosia v. Amazon.com, Inc.*
   834 F.3d 220(2d Cir. 2016)............................................................... 5

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*
   85 N.Y.2d 20 (1995) .................................................................... 11

*Pelayo v. Nestle USA, Inc.*
   989 F. Supp. 2d 973 (C.D. Cal. 2013). ............................................. 11, 19

*Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*
   721 F.3d 95 (2d Cir. 2013)................................................................ 9

*Quinn v. Walgreen Co.*
   958 F.Supp.2d 533 (S.D.N.Y.2013) ...................................................... 7

*Reid v. GMC Skin Care USA Inc.*
    2016 WL 403497, at *18 (N.D.N.Y Jan. 15, 2016) ................................................... 5

*Selevan v. N.Y. Thruway Auth.*
    584 F.3d 82 (2d Cir. 2009 .......................................................................................... 5

*Small v. Lorillard Tobacco Co., Inc.*
    679 N.Y.S.2d 593 (1998) .......................................................................................... 22

*Spratley v. FCA US LLC*
    No. 17-cv-0062, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) ................................. 4

*Thomas v. JPMorgan Chase & Co.*
    811 F. Supp. 2d 781(S.D.N.Y. 2011) ......................................................................... 9

*Time Warner Cable, Inc. v. DIRECTV, Inc.*
    497 F.3d 144 (2d Cir. 2007 ....................................................................................... 20

*Tinlee Enters., Inc. v. Aetna Cas. & Sur. Co.*
    834 F.Supp. 605 (E.D.N.Y.1993 ............................................................................... 21

*Tomasino v. Estee Lauder Companies Inc.*
    44 F. Supp. 3d 251 (E.D.N.Y. 2014) ........................................................................... 5

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*
    549 F.3d 100 (2d Cir. 2008) ........................................................................................ 5

*Weaver v. Chrysler Corp.*
    172 F.R.D. 96 (S.D.N .Y.1997) ................................................................................. 21

*Weisblum v. Prophase Labs, Inc.*
    No. 14–CV–3587 (JMF), 2015 WL 738112, at *10 (S.D.N.Y. Feb. 20, 2015). ....... 23

*Wilbur v. Toyota Motor Sales, U.S.A., Inc*
    86 F.3d 23 (2d Cir.1996) ........................................................................................... 24

*Wilson v. Frito–Lay N. Am., Inc.*
    No. 12–CV–1586, 2013 WL 1320468, at *15 (N.D.Cal. Apr. 1, 2013) ..................... 25

*Woods v. Maytag Co.*, No. 10-CV-0559
    2010 WL 4314313, at *15-16 (E.D.N.Y. Nov. 2, 2010) ............................................ 21

## **STATUTES**

7 C.F.R. Part 205 ............................................................................................................... 12

7 C.F.R. § 205.2 ................................................................................................................. 20

7 C.F.R. § 205.605(b) ...................................................................................... *passim*

7 U.S.C. § 6501, et. seq. ...................................................................................13

7 U.S.C. § 6502(21) .........................................................................................13

7 U.S.C. § 6504(1) ...........................................................................................13

7 U.S.C. § 8101 ................................................................................................13

15 U.S.C. § 2301(6)(A) ............................................................................... 24, 25

15 U.S.C. § 2310(d)(1)) ....................................................................................24

16 C.F.R. Part 260 ...........................................................................................13

21 C.F.R. § 73.575 ...........................................................................................17

21 C.F.R. § 184.1733 ....................................................................................... 18

39 Fed. Reg. 39,849 .........................................................................................13

58 Fed. Reg. 2302, 2407 (Jan.6, 1993) ...........................................................12

75 Fed. Reg. 63,552 (Oct. 15, 2010) ...............................................................14

80 Fed.Reg. 69905-01, 2015 WL 695821080 (Nov. 12, 2015) ................ 11, 12

## **OTHER AUTHORITIES**

2002 Farm Bill, H.R. 2646 (2001-2002) Public Law No. 107-171 ...............13

Health Canada's Natural Health Products Regulations ..................................15

# I.  INTRODUCTION

Plaintiff's Amended Complaint (the "Complaint") challenges the labeling of thirty-two cosmetic products manufactured by California Natural Living, Inc. ("CNL") that include the word 'natural' in various phrases and/or term "natural cleaners." Notwithstanding the absence of any alleged '100% natural' or 'all natural' representations, and without identifying advertising or marketing beyond the label relied upon by Plaintiff, Plaintiff alleges CNL's labeling, advertising, and marketing is false and misleading because the manufactured cosmetic products contain some allegedly 'synthetic' ingredients.

# II.  PLAINTIFF'S ALLEGATIONS

Each of Plaintiff's claims for relief are based on the same allegations concerning the labeling of thirty-two different CNL products encompassing at least twelve types of personal care products, e.g., various moisturizers, body washes, bubble baths, bug repellants, shampoos, conditioners, and detanglers. Compl., ¶ 1. Plaintiff purchased only three of the products. *Id*. at ¶ 33. Plaintiff alleges the presence of ten challenged ingredients variously found in the different products causes CNL's uses of the word 'natural' and/or the phrase 'natural cleansers' to be false or misleading. *Id.* at ¶¶ 2. Plaintiff summarily concludes the ten ingredients are 'synthetic' (*id*. at ¶ 6), despite nine of the ingredients being naturally derived. In support of her conclusion, Plaintiff misleadingly cites various sources irrelevant to cosmetics that in many instances contradict her synthetic conclusions. *Id*. at ¶ 9.

In particular, Plaintiff relies upon and attaches to her Complaint an un-adopted draft guidance of the U.S. Department of Agriculture ("USDA") National Organic Program ("NOP")—a tentative recommendation of the National Organic Standards Board that, if adopted, would only be applicable to certified organic agricultural products; and a definition of the word 'synthetic' from the federal statute governing certified organic agricultural products. *Id.* at ¶11.

Neither the definition nor the Draft Guidance is applicable to cosmetics, none of which are claimed to be certified organic, and neither are indicative of what a reasonable consumer believes the word 'natural' means in the context of cosmetics.[1] Plaintiff asserts no reason why the Draft Guidance should be treated as authoritative. Plaintiff's adoption of the Draft Guidance is a notable concession however as it acknowledges processed substances may nevertheless be considered 'natural' if from a natural source through a naturally occurring biological process:

> [A] substance is natural—as opposed to synthetic—if: (a) it is **manufactured, produced, or extracted from a natural source** (i.e. naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the **chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating** or burning biological matter.

*Id*. at ¶ 11, Ex. A (emphasis added).

Furthermore, as explained below, even under the Draft Guidance, with the exception of the sodium benzoate, many—if not all—of the challenged ingredients are " 'natural,' as opposed to 'synthetic,' " because they are "manufactured, produced, or extracted **from a natural source** (i.e. naturally occurring mineral or biological matter)" or "the chemical change was **created by a naturally occurring biological process** such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter." [2]

Plaintiff asserts five causes of action on behalf of herself and various classes. The first two causes of action for violation of GBL §§ 349 and 350 brought on behalf of Plaintiff and a subclass of New York purchasers. The remaining three causes of action are brought on behalf of

---

[1] If Plaintiff insists the NOP 'organic' definition is applicable to the products at issue here, though it is not, she must also recognize the NOP specifically permits products labeled 'organic' to contain up to 5% non-organic ingredients, **including synthetic ingredients**, 7 C.F.R. 205.301. By analogy, a product labeled merely 'natural' should likewise permissibly contain up to 5% non-natural ingredients.

[2] *E.g.*, Panthenol (i.e., Vitamin B-5) is extracted from the vegetable sources through condensation reaction which is a naturally occurring biological process; Tocopherol (i.e., Vitamin E) and Glyceryl Stearate (Stearic Acid) are each derived from vegetable sources via saponification—a process permitted under the OFPA; and Xanthan Gum is derived from sugar via fermentation.

Plaintiff and a nationwide class of consumers for violation of the consumer protection statutes of 41 different states (Count Three); breach of express warranty under the statutes of 50 states (Count Four); and violation of the MMWA (Count Five).

## III.  ARGUMENT

### A.  THIS COURT LACKS PERSONAL JURISDICTION WITH RESPECT TO CLAIMS ASSERTED ON BEHALF OF PUTATIVE CLASS MEMBERS LOCATED OUTSIDE NEW YORK FOR PURCHASES OUTSIDE NEW YORK

The Court should dismiss the claims asserted on behalf of the proposed nationwide class for lack of personal jurisdiction. Alternatively, the Court should strike the class allegations concerning the proposed nationwide class because, on the face of the Complaint, it will be impossible to certify that class as the Court lacks jurisdiction over Defendant CNL to adjudicate the claims asserted on its behalf. *See Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015) (noting, to grant motion to strike class allegations, defendant must demonstrate it would be impossible to certify the alleged class on the face of the complaint).

To satisfy due process for asserting personal jurisdiction over CNL, Plaintiff must demonstrate CNL has sufficient contacts with this forum to establish either specific or general personal jurisdiction. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014); *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017). General personal jurisdiction allows a court to hear all claims against a defendant, and requires that the defendant be essentially "at home" in the forum. *See Daimler*, 134 S. Ct. at 749. For a court to exercise specific personal jurisdiction, however, "'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum." *Bristol-Myers*, 137 S. Ct. at 1780 (*quoting Daimler*, 134 S. Ct. at 754) (alterations and emphasis in original). Specific personal jurisdiction permits only "adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted).

The Complaint fails to allege facts to establish general or specific personal jurisdiction over CNL. Under *Daimler*, "except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F. 3d 619, 627 (2d Cir. 2016). The Complaint alleges CNL's principle place of business is in California. Compl. ¶¶ 33, 34. Plaintiff does not allege "continuous and systematic" affiliations with New York sufficient to render it "at home" in the forum. Therefore, CNL is not subject to general personal jurisdiction in New York.

Further, although Plaintiff alleges she is a citizen of New York State, Compl. ¶ 33, and seeks to represent a nationwide class of consumers who purchased the listed products "anywhere in the United States," Compl. ¶¶ 36, 71-80, the Complaint alleges no facts suggesting the nationwide class's claims arise from or relate to any contacts or affiliations CNL has with New York. As the Supreme Court has made clear, to satisfy due process, it is not enough the claims of the non-resident proposed class members are similar to those asserted by the resident. Rather, where no connection is alleged between a claim and a defendant's activity in the forum, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 137 S. Ct. at 1781. The analysis in *Bristol-Myers* is controlling: "Personal jurisdiction in class actions must comport with due process just the same as any other case." *In re Dental Supplies Antitrust Litig.*, No. 16-CV-696, 2017 WL 4217115, at *1 (E.D.N.Y. Sept. 20, 2017) (class action claims dismissed for lack of personal jurisdiction, *citing Bristol-Myers*); *see also Spratley v. FCA US LLC*, No. 17-cv-0062, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) (dismissing claims by non-resident plaintiffs in class action, where no connection was shown between plaintiffs' claims and defendants' contacts with New York, *citing Bristol-Myers*).

**B.      PLAINTIFF LACKS STANDING TO SEEK THE RELIEF REQUESTED**

The burden of establishing subject matter jurisdiction rests upon Plaintiff. "[T]o ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit." *Id.* at 89 (*quoting W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008)) (alteration in *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)). The "irreducible constitutional minimum" of standing requires Plaintiff to show (1) she has suffered a concrete and particularized injury-in-fact that is actual or imminent, not "conjectural or hypothetical"; (2) the injury is fairly traceable to the defendant's allegedly unlawful conduct; and (3) the injury will likely be redressed by the requested relief. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983) ("real or immediate threat").

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs.*, 528 U.S. 167, 185 (2000). A plaintiff seeking to represent a class must personally have standing as to each claim for relief. *Lewis v. Casey*, 518 U.S. 343, 357 (1996); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (no standing where injunction would not redress alleged injury). Redressability requires that it be likely and not merely speculative that Plaintiff's injury will be remedied by the relief sought.

**(1)      Plaintiff Lacks Standing to Seek Prospective Injunctive Relief**

To satisfy standing requirements, Plaintiff must allege an intent to purchase the Products at issue in the lawsuit—not some different or new version of the product, reformulated to her liking. *See Buonasera v. The Honest Co., Inc.*, 208 F. Supp.3d 555 (S.D.N.Y. Sept. 23, 2016) (injunctive relief denied where plaintiff alleged she would only purchase if reformulated).[3]

In *Buonasera*, the plaintiff brought a putative class action lawsuit against a cosmetics

---

[3] *See also Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014); *Reid v. GMC Skin Care USA Inc.*, 2016 WL 403497, at *18 (N.D.N.Y Jan. 15, 2016) (dismissal required by Supreme Court and Second Circuit precedent where plaintiff does not allege she will purchase the same offending product in the future).

manufacturer for allegedly deceptive product labeling in violation of, *inter alia*, GBL §§ 349 and 350. *Id.* at 559. The court held the plaintiff did not allege a sufficient future injury to establish standing to assert claims for injunctive relief because she had alleged she was, in fact, unlikely to purchase the products again. *Id.* at 564-65. Instead, the plaintiff alleged she would only consider purchasing the products again if the "products were reformulated such that its representations were truthful, Plaintiff would consider purchasing Honest's products in the future." *Id.* at 564.[4]

Similarly, Plaintiff here alleges she would consider purchasing the products again <u>only</u> "[i]f the ingredients were actually 'Natural,' as represented on the Products labels," (Compl., ¶ 35), i.e., only if the products were reformulated to her liking. "This allegation is insufficient to allege future injury." *Buonasera,* 208 F.Supp.3d at 564-65.

Plaintiff additionally alleges she "cannot purchase the Products because she has no way to know that the labeling of the Products is, and will be, truthful and non-misleading." Compl., ¶ 37. This allegation, however, is inconsistent with her allegation setting forth by name the ingredients in each of CNL's products she personally finds objectionable. *Id.,* ¶ 6. Plaintiff has not alleged—nor could she—that CNL fails to meet its obligation under FDA regulation to fully and conspicuously disclose all the ingredients in its products by their customary names in an ingredient list on the packaging. *See* 21 C.F.R. 701.3. Consequently, Plaintiff is in no danger of being misled as to whether CNL's products contain the contested ingredients, as she can simply read the ingredient list. [5] As Plaintiff has no likelihood of future injury, her claims for injunctive relief should be dismissed for lack of standing.

---

[4] *See also In re Avon Anti–Aging Skincare Creams & Products Mktg. & Sales Practices Litig.*, No. 13–CV–150 JPO, 2015 WL 5730022, at *8, (S.D.N.Y. Sept. 30, 2015) (no standing for forward-looking injunction because "Article III does not permit ... public policy exception" to further consumer protection statutes).

[5] Plaintiff conveniently omits the back labels of the products which show the products consist entirely of natural and naturally derived ingredients, with the exception of a few products containing 0.0011% sodium benzoate, a Nature Identical certified preservative. *See*, Diesch Decl. Ex. 18 for product labels.

**(2)     Plaintiff Lacks Standing as to Products She Did Not Purchase**

In New York, "[c]ourts are split as to whether plaintiffs have standing to assert claims relating to products they themselves did not purchase, but which are substantially similar to products they did purchase." *Quinn v. Walgreen Co.*, 958 F.Supp.2d 533, 541 (S.D.N.Y.2013); *also Hart v. BHH, LLC*, No. 15cv4804, 2016 WL 2642228, at *3 (S.D.N.Y. May 5, 2016). "Some federal courts have held, as a matter of law, that a plaintiff lacks standing to assert claims relating to products they did not purchase." *Jovel v. i–Health, Inc*., No. 12 Civ. 5614, 2013 WL 5437065, at *10 (E.D.N.Y. Sept. 27, 2013) (citing cases).

"In cases where courts have held that plaintiffs may have standing to assert claims for unnamed class members based on products the plaintiffs themselves did not purchase, the '**critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased**.'" *Id.* (citation omitted, emphasis added). Plaintiffs do not have "free reign to bring lawsuits regarding products they never purchased." *Hart,* 2016 WL 2642228, at *4. Where the false claim is tethered to the composition of the product, simply stating the products are similar is not enough. *Goldemberg v. Johnson & Johnson*, 317 F.R.D. 374, 391 (S.D.N.Y. 2016); *DiMuro v. Clinique Labs., LLC,* 572 Fed.Appx. 27, 29 (2d Cir. 2014) (no standing to bring claims for unpurchased products where "each of the seven different products have different ingredients, and Clinique made different advertising claims for each product").

As in *Goldemberg*, Plaintiff seeks redress relating to thirty-two different cosmetics products encompassing at least twelve different types of personal care products—all with different formulations, conceivably encompassing hundreds of different ingredients. Plaintiff purchased only three products: Calendula Shampoo & Body Wash (contains the tag line 'safe♥natural♥fun' under the brand name and the phrase 'natural cleansers' on the label); Nourishing Cream (contains the tag line 'Natural Pregnancy' under the brand name); and

7

Calming Bubble Bath (contains the tag line 'safe♥natural♥fun' under the brand name).

Other than alleging the challenged ingredients are contained in various products, Plaintiff fails to allege sufficient facts to suggest the unpurchased products are "substantially similar" to the product(s) she purchased. For example, some of the products Plaintiff did not purchase contain other various statements that contain either the adverb 'naturally' or the word 'natural.' *Id*. at ¶ 6. For example, the Calming Bubble Bath & Body Wash contains only the phrase 'naturally perfect for the whole family' (*id*. at p. 9), Calming Jelly Mousse contains the phrases 'safe♥natural♥fun,' 'natural hair gel,' and 'natural starches' (*id*. at p. 22), and the Bug Repellant's label includes the statement 'Natural Bug Repellant' (*id*. at p. 34).[6] Also, many of the products are alleged to contain only a single allegedly offensive ingredient—most which are identified as being vegetable derived. (*Id*. at pp. 29-34, 36.) Also, none of the unpurchased products containing the four challenged ingredients in the Nourishing Cream also include the claim 'Natural Pregnancy.' Also, many of the labels ingredient lists identify the source of the naturally derived ingredients. Diesch Decl., Ex. 18 (*e.g*, "*sourced from corn (non-GMO)"). The unpurchased products also differ in other ways: for instance, what percentages are the contested ingredients in the Products? What are the functions served by the allegedly offending ingredients in the various Products? Are they cleansers derived from plants? Accordingly, to the extent the Complaint survives, all claims of relief as to the unpurchased products should be dismissed and all references to unpurchased products should be stricken.

**(3)**     **Plaintiff Lacks Standing to Assert Claims Based on Other States' Statutes**

Plaintiff lacks standing to assert claims under the laws of other states. Relevant here, the Supreme Court has held, "[t]hat a suit may be a class action adds nothing to the question of

---

[6] The Bug Repellant also specifically identifies on the information the percentage of the "Natural Bug Blend Active Ingredients" and the "Other Ingredients" on the product's back label. *See* Diesch Decl. Ex. 18.

standing...." *Lewis v. Casey*, 518 U.S. at 357. Rather, in the case of a class action, there must be "a named plaintiff sufficient to establish jurisdiction over each claim advanced." *Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc*., 721 F.3d 95, 112 (2d Cir. 2013); *see also Comer v. Cisneros*, 37 F.3d 775, 788 (2d Cir. 1994) ("For federal courts to have jurisdiction over any of these claims, only one named plaintiff need have standing with respect to each claim."); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co*., 862 F. Supp. 2d 322, 331 (S.D.N.Y. 2012) ("For each claim asserted in a class action, there must be at least one class representative ... with standing to assert that claim."). It is well established that, "[a] putative class representative lacks standing to bring a claim if he or she did not suffer the injury that gives rise to that claim." *Thomas v. JPMorgan Chase & Co*., 811 F. Supp. 2d 781, 790 (S.D.N.Y. 2011). Therefore, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Mahon v. Ticor Title Ins. Co.,* 683 F.3d 59, 64 (2d Cir. 2012); *see also In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig*., 701 F. Supp. 2d 356, 377 (E.D.N.Y. 2010) ("At this preliminary stage of the litigation, the only relevant standing inquiry is that of the named plaintiffs.").

In addition, to determine whether Plaintiff pleads facts sufficient to state a claim, this Court must first determine under which jurisdiction's substantive law the named Plaintiff's allegations must be analyzed. New York's choice-of-law principles dictate that New York substantive law governs Plaintiff's claims, since the named Plaintiff purchased the Products in New York and was a resident of New York at the time of her purchases. *Johnson v. Nextel Commc'ns Inc*., 780 F.3d 128, 141 (2d Cir.2015) (federal court must apply the choice-of-law principles of the state in which it sits).[7] Plaintiff's attempt to prosecute this action under the laws

---

[7] *See also In re Sling Media Slingbox Advert. Litig*., 202 F. Supp. 3d 352, 357 (S.D.N.Y. 2016); *In re Grand Theft Auto Video Game Consumer Litig*., 251 F.R.D. 139, 149–50 (S.D.N.Y.2008) (under New York interest analysis

of all 50 states is something no federal court has done. *See, e.g., Chin v. Chrysler Corp.*, 182 F.R.D. 448, 461 (D.N.J. 1998).[8] And with good reason: it would be impossible for any Court to instruct a jury under 50 states' laws. Indeed, "the verdict form necessary to submit the case to the jury would read more like a bar exam," and the "jury would have to be instructed to consider various burdens of proof, and in some cases, contradictory standards of conduct." *Harding v. Tambrands Inc.*, 165 F.R.D. 623, 632 (D. Kan. 1996).

Here, Plaintiff alleges she purchased three products at "a retail store" in New York. Compl. ¶ 33. She brings claims on behalf of herself and a nationwide class of consumers for alleged violations under forty-one other states' consumer protection laws, *id*. at ¶ 73, and the express warranty laws of all fifty states, *id*. at ¶ 88. Plaintiff does not allege she was personally injured in any other state, nor does she allege any facts to establish a claim under any other states' laws, and thus cannot have standing with respect to each claim she seeks to bring. Since Plaintiff is not a resident of any state other than New York and did not purchase CNL's products in any state but New York, she does not have standing to assert a claim under the consumer protection laws of any other jurisdiction. Accordingly, Counts 3 and 4 of the Complaint should be dismissed based on the statutes of other states.

---

approach, the law of state in which a consumer purchased product governs the consumer's claims); *In re Bayer Corp. Combination Aspirin Products Mktg. & Sales Practices Litig.*, 701 F.Supp.2d 356, 379 (E.D.N.Y.2010) ("Generally, consumer fraud cases are governed by the law of the state where the consumer resides."); *Mosley v. Vitalize Labs, LLC*, Nos. 13–cv–2470 (RJD) and 14–cv–4474 (RJD), 2015 WL 5022635, at *9 (E.D.N.Y. Aug. 24, 2015) (dismissing New York and New Jersey consumer protection claims because plaintiff only purchased in California). Further, "[a]t least one named plaintiff must have standing with respect to each claim the class representatives seek to bring." *In re Ditropan XL Antitrust Litig.*, 529 F.Supp.2d 1098, 1107 (N.D. Cal. 2007). When "a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal." *In re Flash Memory Antitrust Litig.*, 643 F.Supp.2d 1133, 1164 (N.D. Cal. 2009) (*citing Ditropan*, 529 F. Supp. 2d at 1106-07).
[8] *See also* S. Rep. 109-14, at 64, Class Action Fairness Act of 2005 (February 28, 2005) ("The bottom line is that over the past ten years, the federal court system has not produced a final decision — not even one — applying the law of a single state to all claims in a nationwide or multi-state class action.").

**C.**   **EACH OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE SHE FAILS TO ALLEGE SUFFICIENT FACTS TO STATE A CLAIM FOR RELIEF BY FAILING TO PLAUSIBLY ALLEGE HOW THE NATURALLY-DERIVED INGREDIENTS ARE "UNNATURAL"**

"To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet the standard of 'plausibility.'" *Conroy v. The Dannon Company, Inc.*, No. 12-cv-6901 (VB), 2013 WL 4799164, *2 (S.D.N.Y. May 9, 2013) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The standard for whether an act or practice is misleading is an objective one, requiring a showing a reasonable consumer would have been misled by the defendant's conduct. *Marcus v. AT & T*, 138 F.3d 46, 64 (2d Cir.1998); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995)). Though the question of whether a plaintiff is likely to be misled is often a question of fact, the issue is not triable if the plaintiff cannot first identify a plausible misrepresentation under an objective standard. *Id*. In this case, the FDA, FTC, and courts across the country have recognized "[t]here is no single, controlling definition of the word 'natural,'"[9]—and Plaintiff offers no such plausible definition for the words 'natural' or 'synthetic' applicable to manufactured cosmetics.

This case does not involve "100%" or "all" natural representations. Instead, Plaintiff challenges CNL's various uses of the word 'natural', e.g., "safe♥natural♥fun," 'Natural Pregnancy,' 'naturally perfect for the whole family,' 'natural bug repellant," and its use of phrase 'Natural Cleansers' to describe naturally derived surfactants.[10] Counter to Plaintiff's allegations, nine of the ten challenged ingredients are from natural sources, i.e., plants or minerals. Plaintiff

---

[9] *See, e.g., Jones v. ConAgra Foods, Inc.*, No. 12-cv-1633, 2014 WL 2702726, *15 (N.D. Cal. June 13, 2014); Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments, 80 Fed.Reg. 69905-01, at 69906, 2015 WL 6958210(F.R.) (Nov. 12, 2015) ("FDA's 'Natural' Request") ("[T]he term 'natural' is used on a variety of products to mean a variety of things . . . [and] consumers regard many uses of this term as non- informative"). Because there is no controlling federal regulation, nor a universal definition of the term 'natural,' courts have held a complaint should be dismissed if plaintiff "fails to offer an objective or plausible definition" of the term. *See, e.g., Pelayo v. Nestle USA, Inc.*, 989 F.Supp.2d 973, 978 (C.D. Cal. 2013).

[10] The Complaint also includes a single allegation that "the back of the labels state the products are '100% Natural Base,' and have 'Organic Ingredients." However, the Complaint includes no allegations disputing that the ingredients constituting the products' "base" are not natural, nor are there any allegations disputing that the products include organic ingredients. Indeed, the back label specifically identifies the organic ingredients in the ingredient lists. *See, e.g.,* Diesch Decl., Ex. 18.

summarily concludes, without authoritative support, that the presence of any substance, even if naturally derived, that has undergone any processing, no matter how minute and harmless its presence, is legally incompatible with the use of the word 'natural' in any context. Compl. ¶17. Plaintiff's contention lacks legal basis or merit.

**(1)    There is no legally enforceable definition or standard for use of the word 'natural' in the context of manufactured cosmetics.**

There is no official standard for 'natural' or 'synthetic' in the context of manufactured cosmetics. Indeed, no federal agency has even raised the issue in the context of cosmetics. In 2015, the federal FDA opened a pre-rule-making docket to request comments regarding use of 'natural' in the labeling of **food** concerning at least sixteen distinct and highly technical issues including, e.g., the "type(s) of ingredients [that] would disqualify…food from bearing the term [natural]"; whether "the manner in which an ingredient is produced or sourced [should] affect whether a food containing that ingredient may be labeled as 'natural'"; whether "certain production practices used in agriculture, for example, genetic engineering ... be a factor in defining 'natural'"; and whether "the term 'natural' [should] only apply to 'unprocessed' foods [and i]f so, how should 'unprocessed' and 'processed' be defined[?]" FDA's 'Natural' Request, 80 Fed.Reg. 69905-01; Declaration of Angela L. Diesch in Support Of Defendant's Motion to Dismiss Amended Complaint ("Diesch Decl.") Decl. Ex. 1. The comment period ended in May 2016 but no action has been taken as of yet.

Nevertheless, the FDA's longstanding informal policy has been that 'natural' for food means that "nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food *that would not normally be expected to be in the food*." 58 Fed. Reg. 2302, 2407 (Jan.6, 1993) (emphasis added). Further, the agency's definitions of 'artificial flavor' (21 C.F.R. § 101.22(a)(1)) and 'natural flavor' (*id.*, 101.22 (a)(3)), indicate a distinction between 'natural' and 'artificial' based upon **the source** from which an ingredient or

product is derived (i.e., constituents of plant or animal foods)—as opposed to the methods by which the naturally sourced ingredient is processed.

FDA's source-focused approach differs from the process-focused approach found in the OFPA, 7 U.S.C. § 6501, *et seq.,* and its implementing regulations of the NOP, 7 C.F.R. Part 205, that distinguish between naturally-derived but synthetic (i.e., non-natural) and natural ingredients solely for purpose of organic certification of agricultural products. Under the NOP, to be sold or labeled as an organically produced agricultural product, the agricultural product must "have been produced and handled without the use of synthetic chemicals, except as otherwise provided in this title." 7 U.S.C. § 6504(1). Even if an ingredient is sourced from organic plants, if the finished product undergoes chemical processing, the finished product may not be certified organic. 7 U.S.C. § 6502(21).

In contrast, distinct from the NOP, the USDA operates a 'natural' products program, the BioPreferred Program, created by the 2002 Farm Bill, H.R. 2646 (2001-2002) Public Law No. 107-171. Diesch Decl. Ex. 2. Per the program, biobased products are "composed, in whole or in significant part of biological products or renewable domestic agricultural materials (including plant, animal, and marine materials) or forestry materials," 7 U.S.C. 8101, and provide an alternative to conventional petroleum derived products. Notably, the program recognizes the unique needs and context of various product categories in setting minimum natural content.[11] Like the FDA's source-based approach, the BioPreferred Program focuses on ingredients' sources, rather than how the ingredients are processed.

The FTC first evaluated use of the term 'natural' in 1974, issuing a notice of proposed rulemaking that was later terminated in 1983. 39 Fed.Reg. 39,849 (Nov. 11, 1974); Diesch Decl. Ex. 4. Subsequently, in promulgating its Green Guides, 16 C.F.R. Part 260, the FTC underwent a

---

[11] As applicable to cosmetics, the following are biobased product categories and their minimum content of naturally derived ingredients: Bath Products (61%); Hair Products: Conditioner (61%), Shampoos (78%); Lip Care Products (82%); Lotions & Moisturizers (59%); and Sun Care Products, i.e., sunscreen (53%). Diesch Decl. Ex 3.

review of other agencies' handling of the term 'natural,' explaining:

> To the extent that federal agencies have defined, or administered statutes defining, 'natural,' they have **done so only in specific contexts**. ... **At least in part because of the difficulties in developing a definition of 'natural' that would be appropriate in multiple contexts, both the FDA and the FTC have previously declined to establish a general definition**.

75 Fed. Reg. 63,552, at 63,584 (Oct. 15, 2010) (emphasis added.); Diesch Decl. Ex. 5.

In 2016, the FTC brought enforcement actions against cosmetics companies for making '100% natural' and 'all natural' representations for products containing multiple non-naturally derived ingredients. Diesch Decl., Exs. 7, 7A-7D. In response to public comments, the FTC specifically rejected the notion that 'natural' means the same thing as 'all natural,' stating:

> In your comment, you state that products should not be represented as 'natural' if they contain any amount of synthetic ingredients, and that the term must be reserved only for companies that provide complete transparency and proof of the natural chemical makeup of their products. Thus, your comment arguably implies that the consent agreement should prohibit the claim 'natural' unless the product is 'all natural' (i.e., contains no synthetic ingredients). The record does not support revising the order in this way. *We do not have evidence that consumers necessarily interpret 'natural' to mean 'all natural' or no synthetic ingredients. Absent such evidence, we do not feel it would be appropriate in this case for us to presume that consumers have that understanding of the term 'natural.'*

Diesch Decl., Ex. 8 (June 6, 2016, Letter from Secretary on behalf of FTC) (emphasis added).

Further, Plaintiff's conclusion naturally-derived ingredients are 'synthetic,' and therefore incompatible with use of the word 'natural' on a label, merely because they are elements isolated or extracted from natural sources through various processes, is arguably counter to analogous U.S. Supreme Court precedent evaluating 'naturally occurring' in the context of patents. For example, in *Assoc. of Molecular Pathology v Myriad Genetics, Inc.*, 569 U.S. 576 (2013), the Court denied a patent on the basis that an isolated DNA segment separated from the rest of the human genome, involved a *naturally occurring* segment of DNA, and thus, the isolated DNA was not patent eligible. By analogy, ingredients resulting from the isolation or extraction of specific naturally occurring parts or elements remain 'naturally occurring' despite the process by

which they are extracted and Plaintiff fails to allege sufficient facts to support a conclusion that

consumers would not consider naturally occurring parts or elements as 'natural' or inconsistent

with the use of the word 'natural' within the context of a manufactured cosmetic, e.g., 'natural

starches,' 'natural cleansers,' or 'natural bug repellant.'[12]

### (2) Plaintiff's allegations do not support her contention the products are mislabeled as 'natural'

Plaintiff's Complaint is premised on the notion the FTC is wrong, and that a reasonable

consumer expects that if the word 'natural' appears on a manufactured cosmetic, then there must

be nothing in the product that might be characterized as 'synthetic,' regardless of whether the

ingredient was naturally derived or consists of primarily natural or naturally derived ingredients.

In support of her claim, as to each ingredient, Plaintiff misleadingly cites various sources

irrelevant to cosmetics. *See* Compl. ¶ 9. Plaintiff also cites in two footnotes the "Skindeep"

database of cosmetic ingredients made available online by the Environmental Working Group

("EWG").[13] Compl., ¶¶ 9(a) fn.3 (Lauryl Glucoside); 9(i) fn.8 (Sodium Benzoate). As Plaintiff

has adopted the EWG cosmetics database as a source of accurate information regarding the

substances at issue, it is appropriate for the Court to use that database in evaluating her claims.[14]

The entries in that database for each of the substances at issues supports the conclusion that there

is nothing about the use of these common cosmetic ingredients inconsistent with the use of the

word 'natural' on CNL's products.

---

[12] Plaintiff's position is also inconsistent with third-party natural standards which all permit the presence of the challenged ingredients on products labeled 'natural,' (*see* Diesch Decl. Exs. 9-13), as well as Health Canada's Natural Health Products regulations which permit each of the challenged ingredients as approved non-medicinal ingredients under the Health Canada's, (*Id.*, Exs. 17, 17A-17J).

[13] https://www.ewg.org/skindeep/#.Wod2smaZOV4. EWG is a non-profit environmental organization founded in 1993 that specializes in research and advocacy in the areas of toxic chemicals, agricultural subsidies, public lands, and corporate accountability.

[14] *See McMahon v. Take-Two Interactive Software, Inc.* No. EDCV 13-02032-VAP, 2014 WL 324008 at *2 (C.D.Cal. Jan. 29, 2014) ("Courts have found website … articles to be a proper subject for judicial notices where those materials are relied on by a plaintiff or concern facts at issue in a complaint").

**Lauryl Glucoside and Decyl Glucoside:** Plaintiff cites to the EWG skindeep database to assert that lauryl glucoside is 'synthetic.' Compl. ¶ 9(a) n 3. EWG, however, does not refer to the ingredient as a 'synthetic,' but rather identifies it as a "a sugar- and lipid-based surfactant" that is "[d]etermined safe for use in cosmetics." Diesch Decl., Ex. 14-A. Similarly, decyl glucoside is merely described in the EWG database as "a glucose-based surfactant commonly used in shampoos and body washes." *Id*. Ex. 14-C. There is no assertion that either ingredient is other than "natural" and are, therefore, accurately described by CNL as "Natural Cleansers."**15**

**Panthenol:** Plaintiff's attack on panthenol is limited to her conclusory allegation that panthenol is a 'synthetic compound.' Compl., ¶ 9(b). In contrast, EWG makes clear that panthenol can be a naturally derived product: "Panthenol is a form of vitamin B5, used as a moisturizer and lubricating compound. This ingredient is listed in the PETA [People for Ethical Treatment of Animal]'s Caring Consumer Guide as a substance that can be of either animal or plant origin." Diesch Decl., Ex. 14-B.

**Tocopherol:** The only support Plaintiff cites for tocopherol is a federal regulation exempting residues of various substances from certain requirements when used in pesticides for agriculture. Compl., ¶ 9(d). The regulation has no bearing on whether the presence of tocopherol is contrary to use of the word 'natural' on the label of a cosmetic. EWG also plainly states "[t]ocopherols are a class of naturally occurring chemical compounds related to Vitamin E." Diesch Decl., Ex. 14-D.

**Glyceryl Stearate (Stearic Acid):** As to glyceryl stearate, Plaintiff cites a federal regulation allowing certain nonorganic substances in processed products labeled as 'organic.' 7 C.F.R. § 205.605(b). Although the regulation does group various glycerides with approved

---

15 Plaintiff's position is also contradicted in the source cited in footnote 4 of the Complaint. Compl. ¶ 9(c) n.4. In the referenced Cosmetic Ingredient Review ("CIR Expert Panel") Final Safety Assessment (at p. 2), decyl glucoside and other alkyl glucosides (like lauryl glucoside) are described as 'green' because the manufacturing process involves "the use of natural and renewable sources (e.g., the alcohols can be *obtained from coconut oil or palm oil and the glucose or polysaccharide can be obtained from corn, potato, or wheat starch*)." Diesch Decl., Ex. 15.

synthetics, it reaches no other conclusions about them. Further, EWG provides, "Stearic acid is a naturally occurring fatty acid. It is listed in the PETA's Caring Consumer guide as a substance of animal origin, since stearic acid is primarily derived from rendered fat of farm and domestic animals." Diesch Decl., Ex. 14-E.

**Xanthan Gum:** Plaintiff acknowledges xanthan gum is naturally derived, stating that it is "derived from the fermentation of sugars." Her challenge to its use by CNL on products labeled 'natural' is again based on its being grouped with 'synthetic' substances approved for use in certified organic agricultural products under the NOP. 7 C.F.R. § 205.605(b). The NOP has no application to the labeling of cosmetics as 'natural.'[16] Also, EWG identifies xanthan gum as "a sugar-based polymer produced by bacteria;..." Diesch Decl., Ex. 14-F. Consequently, even under the USDA Draft Guidance Plaintiff cites, it is 'natural' and consistent with CNL's labeling.

**Titanium Dioxide**: Plaintiff cites a regulation listing Titanium Dioxide as a permissible color additive for foods exempt from certification. Compl. ¶ 7g. While the regulation does indicate that titanium dioxide is "synthetically prepared," 21 C.F.R. 73.575(a), it does not impose any restriction on the labelling of products containing the ingredient. EWG describes it as "an inorganic compound used in a range of body care products such as sunscreens and makeup." Diesch Decl., Ex. 14-G. Plaintiff cannot dispute Titanium Dioxide is derived from a mineral.

**Cetyl Alcohol**: Plaintiff acknowledges cetyl alcohol is naturally derived, quoting a U.S. Department of Health and Human Services database for the fact that the source of the substance is "obtained from coconut oil or tallow." Compl., ¶ 9(h). EWG further clarifies, "[c]etyl alcohol is a long chain organic alcohol; according to the PETA's Caring Consumer guide, this ingredient can be of either animal or plant origin." Diesch Decl., Ex. 14-H. Consequently, its presence is not inconsistent with CNL's use of the word 'natural.'

---

[16] Plaintiff additionally cites a medical journal article noting the possibility that the ingesting of xanthan gum by infants may be linked to illness. Cosmetics, however, are neither typically eaten or used by infants, and Plaintiff has not alleged any of the products are not safe for use, the article has no relevance to cosmetic product labeling.

**Sodium Benzoate:** CNL concedes Sodium Benzoate is a non-naturally derived synthetic preservative, but disputes it is inconsistent with the its use of the word 'natural' on the products' labeling. Reasonable consumers understand that water-based products must be preserved to maintain shelf life, prevent spoilage, and to protect from infection resulting from the growth of mold, fungus, or other pathogens. Plaintiff fails to allege why the commercially acceptable (and necessary) preservative would not be expected in manufactured cosmetic products—even one with a label that includes the word 'natural' in various phrases or with 'natural cleansers.' Consumers expect manufactured cosmetics to last multiple years.[17]

Sodium benzoate is FDA approved, has received the GRAS (Generally Recognized as Safe) rating, 21 C.F.R. 184.1733, and the CIR Expert Panel found Sodium Benzoate, as a cosmetic ingredient, is "safe in the present practices of use and concentration." Diesch Decl., Ex. 20. The CIR Expert Panel concluded sodium benzoate, although safe for use in cosmetics up to 5%, (*id.* at p. 16), is used in the United States in cosmetic preparations at a rate of 0.000001% to 1%. *Id.* at p. 3. In the European Union, the maximum authorized concentrations for sodium benzoate in cosmetic products are: rinse-off products (2.5%, as acid) and leave-on products (0.5%, as acid). Diesch Decl. Ex. 21. Thus, even if sodium benzoate were used at the highest concentration identified by the CIR Expert Panel (1%), or at the highest permitted level under EU Regulations (2.5%), given sodium benzoate is the only non-naturally derived synthetic ingredient alleged to be in only a handful of the products, the formulations consist of a minimum of 97.5% natural or naturally derived ingredients.[18]

---

[17] In support her conclusion sodium benzoate causes the 'natural' statements to be misleading, Plaintiff references a toxicity study which examined the genotoxic effects of food preservatives at increased exposure limits, as well as a study regarding the potential chemical reaction of sodium benzoate and ascorbic acid in carbonated sodas. Compl., ¶ 9(i). Neither study is applicable or indicative of anything relevant in this case.

[18] EWG describes sodium benzoate as "a preservative commonly used in foods, pharmaceuticals and cosmetics." Diesch Decl., Ex. 14-J. However, the entry also indicates a synonym is "benzoic acid." *Id.* The entry for benzoic acid explains that it is "a naturally occurring and synthetically produced substance; it is used in food and cosmetics as a preservative." *Id.*, Ex. 14-K. The entry further explains (emphasis in original): **This ingredient may be derived**

**Glycerin:** EWG describes glycerin as "a naturally occurring alcohol compound and a component of many lipids. Glycerin may be of animal or vegetable origin." Diesch Decl., Ex. 14-I. Plaintiff cannot dispute the substance is naturally derived, so she again points to the inapplicable organic regulations to conclude it is 'synthetic.' 7 C.F.R. § 205.605(b). Based on the NOP, Plaintiff concludes "[glycerin] cannot be described as 'natural,'" a conclusion the regulation does not make, and is contrary to EWG's database (that Plaintiff adopts as authoritative) and is contrary to the USDA "Technical Report" prepared for the NOP to which Plaintiff cites. Compl., ¶ 9(j). Plaintiff omits the initial summary section of the Technical Report that indicates glycerin is a "synthetic" substance "allowed as an ingredient in or on processed products labeled as 'organic' or 'made with organic...'" Diesch Decl., Ex. 16. In other words, although the processing of naturally derived glycerin is sufficiently minimal to allow its presence in products labeled 'organic,' Plaintiff contends it is inappropriate for products labeled 'natural.' Plaintiff's contention is without basis in law and contrary to what rational consumers expect when they look at product packaging. Indeed, courts have recognized consumers often consider 'organic' a higher standard than 'natural,' and 'natural' challenges have been held not actionable as to ingredients permitted in 'organic' products. *See Thurston v. Bear Naked, Inc.*, No. 11-CV-2985-H BGS, 2013 WL 5664985, at *8 (S.D. Cal. July 30, 2013) ('natural' claims not actionable as to glycerin and tocopherol because permitted in organic processed products and consumers often equate natural to organic); *also Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d at 979; *Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013) (same).

Moreover, although Plaintiff provides "Table 2" from the Technical Report, Compl. ¶ 9(j), Plaintiff misleadingly omits that the Technical Report also explains that Glycerin:

> [G]lycerin can be produced organically by the process of microbial fermentation using only mechanical and biological processes as required in Section 205.270(a)

---

from animals. *From PETA's Caring Consumer:* In almost all vertebrates and in berries. Used as a preservative in mouthwashes, deodorants, creams, aftershave lotions, etc." *Id.*

without the use of allowed synthetics listed in Section 205.605(b). In addition, *certified organic glycerin can be produced by hydrolysis of organic fats and oils using either steam splitting* or traditional saponification with a catalytic amount of an alkali (sodium carbonate, sodium hydroxide, or potassium hydroxide) on the National List. Glycerin, *produced organically by fermentation is an agricultural product as defined in 7 C.F.R. 205.2, since it is a processed product produced from an agricultural commodity*, e.g. cornstarch.

Diesch Decl. Ex. 16 (*see* p. 5 *quoting* Technical Report lines 130-131) (emphasis added).

## D. MANY OF THE CHALLENGED PHRASES ARE NON-ACTIONABLE PUFFERY

The phrases 'safe♥natural♥fun,' 'natural pregnancy,' and 'naturally perfect for the whole family' are non-actionable puffery. "Puffery includes generalized or exaggerated statements which a reasonable consumer would not interpret as a factual claim upon which he could rely," *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011), reconsideration granted in part on other grounds, 2011 WL 5121068 (S.D.N.Y. Oct. 28, 2011).[19]

The subjective phrase "safe♥natural♥fun" describes CNL, its corporate ethos, its rigorous sourcing, evaluation, and testing protocol for ingredients and formulations, and captures the playful yet hard working efforts of the brand's founders in developing formulations that differ dramatically from conventional petroleum-based cosmetic products. The second is aimed at consumers interested in natural pregnancies. The third is a statement that CNL believes the product is 'naturally perfect for the whole family.' None of these statements are a specific representation regarding the products' ingredients. Moreover, as there are no "100%" or "all" natural statements, and there is no legally binding definition or standard for use of the word 'natural' on a manufactured cosmetic, the three statements cannot be proven either true or false. *See Fink*, 810 F.Supp.2d at 644. As such, these three statements are non-actionable puffery and

---

[19] In particular, courts have held that "vague statements of a product's superiority are nonactionable puffery," *Elkind v. Revlon*, No. 14CV2484, 2015 WL 2344134, at *13 (E.D.N.Y. May 14, 2015) (*citing Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 160 (2d Cir. 2007); *see also Avola v. La.-Pac. Corp.*, 991 F. Supp. 2d 381, 392 (E.D.N.Y. 2013) (positing that puffery turns on such factors as the "vagueness," "subjectivity," and "inability to influence ... buyers' expectations"). Likewise, "[r]egarding puffery, the Second Circuit has stated that 'subjective claims about products, which cannot be proven either true or false, are not actionable.'" *Fink*, 810 F. Supp. 2d at 644 (alterations omitted) (*quoting Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995)).

therefore cannot be a basis for Plaintiff's claims that the products' labels are false or misleading.

**E.      PLAINTIFF'S GBL SECTION 349 CLAIM (COUNT 1) FAILS; PLAINTIFF DOES NOT ALLEGE DECEPTIVE ACTS OR PRACTICE**

GBL § 349 declares, "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in New York are unlawful." GBL § 349(a). "A prima facie case under [§] 349 requires a plaintiff demonstrate (1) defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam) (internal citations omitted). Conclusory allegations are "insufficient to state a claim under Section 349." *Moses v. Citicorp Mortgage, Inc.*, 982 F.Supp. 897, 903 (E.D.N.Y.1997).[20]

Thus, to maintain a claim under GBL § 349, Plaintiff must ultimately allege a deceptive scheme that is, at a minimum, plausible. *Woods v. Maytag Co.*, No. 10-CV-0559, 2010 WL 4314313, at *15-16 (E.D.N.Y. Nov. 2, 2010) (dismissing Plaintiff's § 349 claim because he only "vaguely allege[d] that Defendants 'knew' of the alleged defect, and failed to provide enough factual support to plausibly support the contention that a deceptive act or practice [had] taken place"). Although Plaintiff need not allege these facts with the same level of specificity as a fraud claim, general references to advertisements are insufficient to allege a deceptive act or practice. *See Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N .Y.1997).

In addition to failing to allege a plausible deception, the Complaint does not contain a single allegation of how CNL "knew" or even had reason to know its use of the word 'natural' within the context of the labels was false or deceptive. Indeed, the complete lack of a formal binding 'natural' standard, coupled with the fact the Products contain primarily natural and naturally derived ingredients, establish that Plaintiff cannot allege facts to establish CNL knew

---

[20] *See also Tinlee Enters., Inc. v. Aetna Cas. & Sur. Co.*, 834 F.Supp. 605, 610 (E.D.N.Y.1993) (granting motion to dismiss where the claim under the Consumer Protection Act was pled upon information and belief, lacked specificity, and alleged mere conclusions).

the statements to be false or that it engaged in a scheme to deceive consumers to believe that referring to its naturally derived surfactants as "Natural Cleansers" or its other uses of the word 'natural' reasonably implied the products contained absolutely no 'synthetic' ingredients. The GBL § 349 claim fails.

**F.     PLAINTIFF'S GBL SECTION 350 CLAIM (Count 2) FAILS; SHE FAILS TO ALLEGE A LIKELIHOOD OF DECEPTION AS A MATTER OF LAW**

Section 350 of the GBL prohibits false advertising. A cause of action for false advertising is stated when the plaintiff alleges that "the advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury." *DeAngelis v. Timberpeg E., Inc.*, 858 N.Y.S.2d 410, 414 (3d Dep't 2008) (*quoting Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S.2d 400, 403 (2d Dep't 2002)). To prevail, Plaintiff must demonstrate reasonable reliance on CNL's alleged false advertising. Typically, this means the plaintiff must "point to [a] specific advertisement or public pronouncement" upon which she relied. *Small v. Lorillard Tobacco Co., Inc.*, 679 N.Y.S.2d 593, 600 (1998). Dismissal is warranted where, as here, the alleged false representations merely constitute expressions of opinion rather than active falsities. *See Glazer v. LoPreste*, 717 N.Y.S.2d 256 (2d Dep't 2000).

As noted, FTC's pronouncement "natural" does not equate to '100% natural' follows multiple attempts by FTC and FDA, including public comment, to create contextual definitions for 'natural' dating back to 1974. Thus, there is no basis to conclude that reasonable consumers, to whom 'natural' is material, would not understand the various uses of the word 'natural' in this case to mean not a single 'synthetic' is present in the manufactured cosmetic products. Absent a formal standard, whether the Products are "natural-enough" under Plaintiff's subjective understanding of the word is an opinion that is not subject to a finding of truth or falsity. Thus, because the 'natural' statements here constitute expressions of opinion, Plaintiff has failed to allege a plausible misrepresentation of material fact—and her GBL § 350 claim fails.

Notably, this case is materially distinguishable from other cases involving mere 'natural' statements. E.g., in *Goldemberg*, the potentially deceptive conduct involved the trademark "Active Naturals" with "advertising that exclusively touts one particular aspect of the particular products," and not "merely claims about the products placed on the labels[.]" *Goldemberg v. Jonhson & Jonhson*, 8 F.Supp.3d 467, 479 (S.D.N.Y. 2014). In contrast, the Complaint here does not allege facts analogous to those in *Goldemberg*—Plaintiff's claims are premised entirely on the Products' labels and thus the Court needs to consider only what is found on the packaging.

## G.    THE BREACH OF EXPRESS WARRANTY CLAIM (Count 4) FAILS

Under New York law, privity and pre-suit notice remain essential elements of a cause of action for breach of express warranty, unless the plaintiff claims to have been personally injured. *See Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) (*citing* N.Y.U.C.C. § 2-313).[21] Plaintiffs need not show privity if based on misrepresentations contained in "public advertising or sales literature." *Weisblum v. Prophase Labs, Inc.*, No. 14–CV–3587 (JMF), 2015 WL 738112, at *10 (S.D.N.Y. Feb. 20, 2015).[22]

Here, Plaintiff pleads solely economic injury, but fails to allege any specific affirmative representations made by California Baby. Instead, the tag lines 'safe♥natural♥fun' and 'natural pregnancy,' as well as the phrase, 'naturally perfect for the whole family,'—the only challenged phrases on the products Plaintiff purchased—do not amount to an 'affirmation of fact or promise." *See id.* (*citing DiBartolo*, 914 F.Supp.2d at 624–25); *see also* N.Y.U.C.C. § 2–318; N.Y. U.C.C. § 2–313(1)(a). Such generalized phrases do not support an express warranty claim because each is "such that a reasonable consumer would not interpret the statement as a factual claim." *Hubbard v. General Motors Corp.*, No. 95CV4362, 1996 WL 274018 at *6 (S.D.N.Y.

[21] *See also Ebin v. Kangadis Food, Inc.*, 2013 WL 6504547 (S.D.N.Y. Dec. 19, 2013); *DiBartolo v. Abbott Labs.*, 914 F.Supp.2d 601, 624-25 (S.D.N.Y. 2012) (*citing* N.Y.U.C.C. § 2–318).

[22] *See also Goldemberg*, 8 F.Supp.3d at 482 ("A buyer may bring a claim against a manufacturer from whom he did not purchase a product directly, since an express warranty may include specific representations made by a manufacturer in its sales brochures or advertisements" [*quoting Arthur Click Leasing, Inc. v. William J. Petzold, Inc.*, 858 N.Y.S.2d 405, 407 (3d Dep't 2008)]).

May 22, 1996) (internal quotations omitted).

Plaintiff also fails to adequately allege pre-suit notice. Under N.Y.U.C.C. § 2-607(3)(a), an action for breach of express warranty may not be maintained without first complying with the notice requirements. Until the filing of the original complaint, although CNL had received a letter and subsequent settlement demand from Plaintiff's counsel, the identity of both Plaintiff and the purchased products had been withheld despite multiple requests for the information. Diesch Decl. ¶ 20, Ex. 22. Given prior label revisions, it was impossible for CNL to know which products, formulations, or labels, were being challenged. Plaintiff thus denied CNL the opportunity to remedy any perceived breach of warranty and the warranty claim must fail.

**H.    THE MAGNUSON-MOSS WARRANTY ACT CLAIM (Count 5) FAILS**

Plaintiff, on behalf of the nationwide class, alleges CNL violated the MMWA by labeling the products "natural" and/or with "natural cleansers." "The MMWA grants relief to a consumer 'who is damaged by the failure of a ... warrantor ... to comply with any obligation ... under a written warranty.'" *Wilbur v. Toyota Motor Sales, U.S.A., Inc.,* 86 F.3d 23, 26 (2d Cir.1996) (*quoting* 15 U.S.C. § 2310(d)(1)). A written warranty is defined as:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is <u>defect free</u> or will meet a <u>specified level of performance over a specified period of time</u>.

15 U.S.C. § 2301(6)(A).

The MMWA claim must be dismissed because the various uses of the word 'natural' and the term 'Natural Cleansers' do not constitute a written warranty under the MMWA. Courts have uniformly held labels and advertising with 'natural,' 'all natural' or '100% natural' are not written warranties under the MMWA because such statements are mere "product descriptions rather than promises that [the products are] defect free or guarantees of specific performance

levels."[23] Further, the challenged phrases do not constitute a promise that the products "will meet a specified level of performance over a specified period of time." *See Bowling v. Johnson & Johnson*, 65 F.Supp.3d 371 (S.D.N.Y. 2014).[24] The MMWA claim should be dismissed.

## IV. <u>CONCLUSION</u>

Defendant California Living, Inc. dba California Baby + Kids® respectfully requests the Court issue an order dismissing each and every claim in Plaintiff's Amended Complaint.

Dated: March 6, 2018

Respectfully submitted,

DIESCH FORREST, APC

*/s/ Angela L. Diesch*
Angela L. Diesch*
Stephen E. Paffrath*
6542 Lonetree Boulevard
Rocklin, CA 95765
T: (916) 740-6470
F: (916) 740-6460
angela@dieschforrestlaw.com
stephen@dieschforrestlaw.com
*Admitted Pro Hac Vice*

Joshua D. Anders
CHAFFETZ LINDSEY LLP
1700 Broadway, 33rd Floor
New York, NY 10019
T: (212) 257-6960
F: (212) 257-6950
jd.anders@chaffetzlindsey.com

*Attorneys for Defendant*
*California Natural Living, Inc. dba California Baby*
*+ Kids®*

---

[23] *E.g., In re Frito-Lay North America, Inc. All Natural Litigation*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013); *Wilson v. Frito–Lay N. Am., Inc.,* No. 12–CV–1586, 2013 WL 1320468, at *15 (N.D.Cal. Apr. 1, 2013); *Hairston v. South Beach Beverage Co.*, No. cv-12-1429-JFW, 2012 U.S.Dist. LEXIS 74279, at *18 (C.D.Cal. May 18, 2012); *Jones v. Conagra Foods, Inc,* 912 F.Supp.2d 889, 903–04 (N.D.Cal. 2012).

[24] *See also Wilson,* 2013 WL 1320468, at *15 (*quoting* § 2301(6)(A)); *In re ConAgra Foods, Inc.,* 908 F.Supp.2d 1090, 1102 (C.D. Cal. 2012) (holding that a '100% Natural' label is not an assertion that a product is defect free or will meet a specified level of performance over time). *See also Kane v. Chobani, Inc.,* No. 12–CV–2425, 2013 WL 3703981, at *19 (N.D.Cal. July 12, 2013) (holding that a food label is a product description and does not constitute a warranty against a product defect).