## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

PAMELA SUAREZ,
individually on behalf of herself
and all others similarly situated,

    *Plaintiff,*

v.

CALIFORNIA NATURAL LIVING, INC
d/b/a CALIFORNIA BABY + KIDS

    *Defendant.*

Case No.: 7:17-cv-09847-VB-PD

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO MOTION TO DISMISS

Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Adam Gonnelli, Esq.
**THE SULTZER LAW GROUP P.C.**
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Tel: (845) 483-7100
sultzerj@thesultzerlawgroup.com

Melissa S. Weiner, Esq.
Amy Boyle, Esq.
**HALUNEN LAW**
1650 IDS Center
Minneapolis, Minnesota 55401
Telephone: (612) 605-4098
weiner@halunenlaw.com
boyle@halunenlaw.com

*Attorneys for Plaintiff and the Class*

# TABLE OF CONTENTS

Table of Contents……………………………………………………………………....I

Table of Authorities……………………………………………………………....…II-VII

I.     INTRODUCTION…………………………………………………………...………1

II.    FACTUAL BACKGROUND…………………………………………….……….2

III.   ARGUMENT……………………………………………………………………...3

    A.  This Court has Personal Jurisdiction over the Claims of Class Members Nationwide…...3

    B.  Plaintiff Has Standing to Seek the Relief She Requests…………………………………6

          1. Plaintiff Has Standing to Seek Injunctive Relief……………………...……..6

          2. Ms. Suarez's Claims Implicate the "Same Set of Concerns" And Are "Sufficiently Similar" to Those of Consumers of Products She Did Not Purchase…………………………………………………………………....9

          3. Whether Plaintiff Can Represent Out of State Residents Is an Issue for Class Certification and in not Appropriate for Resolution at the Motion to Dismiss Stage …………………………………………………………………...12

    C.  Plaintiff's Complaint Adequately Alleges Defendant's Deception………………………14

    D.  Defendant's Misrepresentations Are Not Mere Puffery…………………………….…...17

    E.  Knowledge and Intent to Deceive are Not Elements of a NY GBL Section 349 Claim...18

    F.  Reliance is not an Element of a NY GBL Section 350 Claim…………………………19

    G.  Plaintiff Has Stated a Claim for Breach of Express Warranty…………………….……21

          1.  Plaintiff is not Required to Show Privity with the Defendant…...………...21

          2.  Plaintiff Provided Defendant with Pre-Suite Notice of its Breach…………..23

    H.  Plaintiff's Magnuson-Moss Warranty Act Claim Should Not Be Dismissed…………..23

IV.    CONCLUSION………………………………………………………………….25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Volkswagen of Am., Inc.*,
795 F.2d 238 (2d Cir. 1986)..........................................................................................24

*Ackerman v. Coca-Cola Co.*,
No. 09 CV 395, 2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. July 17, 2013)......................7, 17

*Aguiar v. Merisant Co.*,
No. 14-00670, 2014 U.S. Dist. LEXIS 165301 (C.D. Cal. March 24, 2014) ..............16

*Albert v. Blue Diamond Growers*,
151 F. Supp. 3d 412 (S.D.N.Y. 2015)..........................................................................8

*Alvarez v. NBTY, Inc.*,
No. 17-cv-00567-BGS, 2017 U.S. Dist. LEXIS 201159 (S.D. Cal. Dec. 6, 2017)........4

*In re Amla Litig.*,
No. 16-cv-6593, 2017 U.S. Dist. LEXIS 175950 (S.D.N.Y. Oct. 24, 2017) ................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................14, 16

*Atik v. Welch Foods, Inc.*,
No. 15-CV-5405, 2016 U.S. Dist. LEXIS 136056 (E.D.N.Y. Sept. 30, 2016)............22

*Ault v. J.M. Smucker*
Co., No. 13 Civ. 3409, 2014 U.S. Dist. LEXIS 67118 (S.D.N.Y. May 15, 2014)........9, 17, 20, 24

*Bautista v. Cytosport, Inc.*,
223 F. Supp. 3d 182 (S.D.N.Y. 2016)..........................................................................10

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
701 F. Supp. 2d 356 (E.D.N.Y. 2010)..........................................................................14

*Belfiore v. Procter & Gamble Co.*,
94 F. Supp. 3d 440 (E.D.N.Y. 2015) (Weinstein, J.) ...................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................14, 16

*Brady v. Basic Research, LLC*,
101 F.Supp. 3d 217 (E.D.N.Y. 2015).....................................................................21, 23, 24

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco*,
582 U.S. ___, 137 S. Ct. 1773, 1783,198 L. Ed. 2d 395 (2017) ....................................1, 3, 4, 5, 6

*Brown v. Hain Celestial Grp., Inc.*,
    913 F. Supp. 881 (N.D. Cal. 2012) .......................................................................10

*Buonasera v. Honest Co.*,
    208 F. Supp. 3d 555 (S.D.N.Y. 2016)..............................................................11, 18

*Cliffstar Corp. v. Elmar Indus., Inc.*,
    254 A.D.2d 723 (1998) ......................................................................................23

*Computer Strategies, Inc. v. Commodore Business Machines, Inc.*,
    105 A.D.2d 167 (N.Y. App. Div. 1984)..............................................................23

*Daniel v. Mondelez Int'l, Inc.*,
    17-CV-00174 (MKB), 2018 U.S. Dist. LEXIS 31074 (E.D.N.Y. Feb. 26, 2018) .......19

*Davidson v. Kimberly-Clark Corp.*,
    873 F.3d. 1103 (9th Cir. Oct. 20, 2017) ............................................................7, 8

*Day v. Air Methods Corp.*,
    No. 5:17-183-DCR, 2017 ....................................................................................4

*Diaz v. Paragon Motors of Woodside, Inc.*,
    424 F. Supp. 2d 519 (E.D.N.Y. 2006)...............................................................24

*DiMuro v. Clinique Labs., LLC*,
    572 Fed. App'x 27 (2d Cir. 2014*)* ....................................................................11

*DiMuro v. Clinique Labs, LLC.*,
    914 F.Supp.2d 601 (S.D.N.Y. 2012) .................................................................10

*Ebin v. Kandangis Food Inc.*,
    No. 13 Civ. 2311, 2013 U.S. Dist. LEXIS 174174 (S.D.N.Y. Dec. 9, 2013) .........21, 22

*Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC*,
    382 Fed. Appx. 110 (2d Cir. 2010) ...................................................................22

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*,
    No. 17-cv-00564 NC, 2017 U.S. Dist. LEXIS 155654 (N.D. Cal. Sep. 22, 2017) .......4

*Forcellati v. Hyland's Inc.*,
    876 F. Supp. 2d. 1155 (C.D. Cal. 2012)............................................................12

*Fort Worth Empls. Ret. Fund v. J.P. Morgan Chase & Co.*,
    862 F. Supp. 2d 322 (S.D.N.Y. 2012)...............................................................14

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
    No. 12-MD-2413 (RRM)(RLM), 2013 U.S. Dist. LEXIS 123824
    (E.D.N.Y. Aug. 29, 2013) .........................................................9, 13, 16, 24

*Glazer v. LoPreste*,
    717 N.Y.S.2d 256 (2d. Dep't. 2000) ........................................................................20

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
    317 F.R.D. 374 (S.D.N.Y. 2016) ...........................................................7, 10, 15, 21

*Harrison v. General Motors Company*,
    No. 17-3129-Cv-S-SRB (W.D. Mo. Sept. 25, 2017) .....................................4

*Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*,
    148 F. Supp. 3d 285 (S.D.N.Y. 2015).................................................................9, 15

*Jaghory v. N.Y. State Dep't of Educ.*,
    131 F.3d 326 (2d Cir. 1997)...............................................................................14

*James v. Penguin Grp. (USA) Inc.*,
    No. 13 Civ. 2801, 2014 U.S. Dist. LEXIS 50769 (S.D.N.Y. Apr. 11, 2014) ................8

*Janney v. General Mills*,
    No. 12-cv-03919, 2014 U.S. Dist. LEXIS 41452 (N.D. Cal. Mar. 26, 2014)..................16

*Jesmer v. Retail Magic, Inc.*,
    863 N.Y.S.2d 737 (2d. Dep't. 2008) ....................................................................21

*Jou v. Kimberly-Clark Corp.*,
    13-03075 JSC, 2013 U.S. Dist. LEXIS 173216 (N.D. Cal. Dec. 10, 2013)..................17

*Kaatz v. Hyland's Inc.*,
    No. 16 .................................................................................................................12

*Kacocha v. Nestle Purina Petcare Co.*,
    No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097
    (S.D.N.Y. Aug. 12, 2016) .............................................................................11, 17

*Karlin v. IVF America, Inc.*,
    93 N.Y.2d 282, 712 N.E.2d 662 (N.Y. 1999) ...............................................8

*Koch v. Acker, Merral & Condit Co.*,
    18 N.Y.3d 940 (N.Y. 2012)........................................................................19, 20

*Koenig v. Boulder Brands, Inc.*,
    995 F. Supp. 2d 274 (S.D.N.Y. 2014)......................................................21, 22

*Kommer v. Bayer Consumer Health*,
    252 F. Supp. 3d 304 (S.D.N.Y. 2017)...............................................................6

*Kurtz v. Kimberly-Clark Corp.*,
    321 F.R.D. 482 (E.D.N.Y. 2017) .....................................................................12

*Luib v. Henkel Consumer Goods, Inc.*,
    No. 17-cv-0302-BMC, 2018 U.S. Dist. LEXIS 18598 (S.D.N.Y. Feb. 5, 2018)..........................16

*Mahoney v. Endo Health Solutions, Inc.*,
    No. 15-CV-9841, 2016 U.S. Dist. LEXIS 94732 (S.D.N.Y. July 20, 2016) ..........................21, 22

*Matson v. Bd. of Educ.*,
    631 F.3d 57 (2d Cir. 2011)..........................................................................................................14

*Morrison v. YTB Int'l, Inc.*,
    649 F.3d 533 (7th Cir. 2011)......................................................................................................12

*Murrin v. Ford Motor Co.*,
    756 N.Y.S.2d 596 (2d. Dep't. 2003) ..........................................................................................21

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012)..........................................................................................11, 12, 13

*Nicosia v. Amazon.com, Inc.*,
    84 F. Supp. 3d 142 (E.D.N.Y. 2015).............................................................................................7

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995) ..............................................................................................................15, 18

*Paulino v. Conopco, Inc.*,
    No. 14-CV-5145 JG RML, 2015 U.S. Dist. LEXIS 108165
    (E.D.N.Y. Aug. 17, 2015) .......................................................................................................18, 23

*Petrosino v. Stearn's Products, Inc.*,
    No. 7:16-cv-007735-NSR, 2018 U.S. Dist. LEXIS 55818
    (S.D.N.Y. March 30, 2018)..........................................................................6, 10, 15, 17, 18

*Quinn v. Walgreen Co.*,
    958 F. Supp. 2d 533 (S.D.N.Y. 2013) .........................................................................................15

*Quinn v. Walgreen Co.*,
    958 F. Supp. 2d 553 (S.D.N.Y. 2013) ...................................................................................10, 11

*Ramirez v. Dollar Phone Corp.*,
    No. 09-CV-2290, 2009 U.S. Dist. LEXIS 92972, 2009 U.S. Dist. LEXIS 92972
    (E.D.N.Y. Oct. 1, 2009) ...............................................................................................................14

*Randy Knitwear, Inc. v. Am. Cyanamid Co.*,
    11 N.Y.2d 5 (1962) ......................................................................................................................21

*Reid v. GMC Skin Care USA Inc.*,
    No. 8:15-CV-277, 2016 U.S. Dist. LEXIS 14001 (N.D.N.Y. Jan. 15, 2016) ...............................7

*Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of N.Y. Mellon,*
  775 F.3d 154 (2d Cir. 2014) ................................................................................13

*In re Salomon Smith Barney Mut. Fund Fees Litig.,*
  441 F. Supp. 2d 579 (S.D.N.Y. 2006) ................................................................14

*Sanchez v. Launch Tech. Workforce Sols, LLC,*
  No. 1:17-cv-1904-ELR-AJB 2018 U.S. Dist. LEXIS 28907
  (N.D. Ga. Jan 26, 2018) ......................................................................................5

*Sanchez v. Launch Technical Workforce Solutions, LLC,*
  No. 1:17-cv-01904 (N.D. Ga. Jan. 26, 2018) ......................................................4

*In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Practices & Prods. Liab. Litig.,*
  No. MD 16-2695 ................................................................................................22

*In re Scotts EZ Seed Litig.,*
  304 F.R.D. 397 (S.D.N.Y. 2015) .......................................................................19

*Segedie v. Hain Celestial Grp., Inc.,*
  No. 14-cv-5029 (NSR), 2015 U.S. Dist. LEXIS 60739 (S.D.N.Y. May 7, 2015) ......................16

*Segovia v. Vitamin Shoppe, Inc.,*
  No. 14-CV-7061, 2016 U.S. Dist. LEXIS 15171 (S.D.N.Y. Feb. 5, 2016) ...................13

*Silva v. Smucker Natural Foods, Inc.,*
  No. 14-CV-6154 RML, 2015 U.S. Dist. LEXIS 122186
  (E.D.N.Y. Sept. 14, 2015) ...............................................................................15

*Singleton v. Fifth Generation, Inc.,*
  No. 5:15-CV-474, 2017 U.S. Dist. LEXIS 170415 (N.D.N.Y. Sept. 27, 2017) ............17

*Sitt v. Nature's Bounty, Inc.,*
  No. 15-CV-4199 (MKB), 2016 U.S. Dist. LEXIS 131564
  (E.D.N.Y. Sep. 26, 2016) ..........................................................13, 15, 16, 21, 22, 24

*Sloan v. General Motors, LLC,*
  16-cv-07244-EMC (C.D. Cal. Feb 7, 2018) ..................................................5, 6

*Small v. Lorillard Tobacco Co.,*
  94 N.Y.2d 43 (N.Y. 1999) ................................................................................18

*Spratley v. FCA US LLC,*
  No. 3:17-cv-0062, 2017 ......................................................................................5

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) ............................................................................................12

*Stolz v. Fage Dairy Processing Indus., S.A.,*
    14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. Sept. 2015) ...........................18

*Tsirelman v. Daines,*
    794 F.3d 310 (2d Cir. 2015) ........................................................................................14

*Tyman v. Pfizer, Inc.,*
    16-CV-06941 (LTS) (BCM), 2017 U.S. Dist. LEXIS 212879
    (S.D.N.Y. Dec. 27, 2017) ............................................................................................20

*Vicuna v. Alexia Foods, Inc.,*
    No. 11-CV-6119, 2012 U.S. Dist. LEXIS 59408 (N.D. Cal. Apr. 27, 2012) ...............24

*Weisblum v. Prophase Labs, Inc.,*
    88 F. Supp. 3d 283 (S.D.N.Y. 2015) ...................................................................21, 22

*Woods v. Maytag Co.,*
    No. 10-CV-0559, 2010 U.S. Dist. LEXIS 116595 (E.D.N.Y. Nov. 2, 2010) ..............19

**Statutes**

15 U.S.C. 2301(6)(A) .........................................................................................................23

California's Unfair Competition Law .....................................................................................8

GBL § 349 ...........................................................................................................3, 8, 18, 19

GBL § 350 ...............................................................................................................3, 19, 20

General Business Law §§ 349 and 350 ...............................................................................19

Federal Rules of Civil Procedure Rule 12(b)(6) .................................................................14

Rule 23 ........................................................................................................................3, 9, 12

Plaintiffs respectfully submit the following in opposition to the motion to dismiss filed by Defendant California Baby, Inc. d/b/a California Baby + Kids ("Defendant").

## I.    INTRODUCTION

Defendant manufactures and sells cosmetic products by expressly representing that they are "natural" or "natural cleansers."   These representations are prominently placed on the front label of each and every Product at issue, however, they are false because the Products are not natural and contain synthetic ingredients.  In its moving papers, Defendant advances a number of arguments for dismissal, all of which are without merit.

First, Defendant asks the court to extend the recent U.S. Supreme Court decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco*, 582 U.S. ___, 137 S. Ct. 1773, 1783,198 L. Ed. 2d 395 (2017), beyond the context of state court mass torts, and to declare that this Court does not have personal jurisdiction over the claims of class members from other states, something that district courts across the nation have declined to do.

Second, Defendant argues that Plaintiff lacks standing to pursue injunctive relief and to assert claims regarding Products she did not purchase.   Most courts which have considered these issues in detail have found that standing exists.

Third, Defendant asks this Court to supplant the reasonable consumer's perspective with Defendant's own self-interested opinion, and to find as a matter of law that no reasonable consumer could have been misled by the Defendant's "natural" claims.  But, it is well-settled in this circuit and across the country that how a reasonable consumer would interpret a label is not appropriate for determination on a motion to dismiss.

Fourth, Defendant's remaining arguments regarding Plaintiff's express warranty and Magnuson Moss Warranty Act claims also must be denied, as Plaintiffs' arguments are in conflict with well-settled law.

1

## II.    FACTUAL BACKGROUND

This putative class action seeks to remedy Defendant's deceptive and misleading business practices with respect to the marketing and sales of its California Baby product line (the "Products"). Defendant manufactures, sells, and distributes the Products using a marketing and advertising campaign centered around claims that appeal to health conscious consumers, i.e., that its Products are "Natural" or contain "Natural Cleansers." Am. Compl. ¶ 2. Many of the Products' labels include a cartoon picture of the sun and a green and blue band along the bottom. *Id.* To further reinforce the supposed "Natural" makeup of the Products, the back labels state the Products are "100% Natural Base" and have "Organic Ingredients." *Id.*

A reasonable consumer viewing each Product's label would understand that the "Natural" or "Natural Cleansers" claims mean that the Products do not contain synthetic ingredients. *Id.* at ¶ 17. In reality, Defendant's Products contain a litany of synthetic ingredients, including lauryl glucoside, panthenol, decyl glucoside, tocopherol, glyceryl stearate (stearic acid), xanthan gum, titanium dioxide, cetyl alcohol, sodium benzoate, and glycerin (vegetable). *Id.* at ¶ 9.

Plaintiff purchased several of the Products during the class period, including California Baby Calendula Shampoo & Body Wash, California Baby Natural Pregnancy Nourishing Cream, and California Baby Calming Bubble Bath. Am. Compl. ¶ 33. Plaintiff purchased the Products because she believed they did not contain synthetic ingredients. *Id.* at ¶ 34. Had she known the truth—that the representations she relied upon in purchasing the products were false, misleading, and deceptive— she would not have purchased them. (*Id.*) As a result of Defendant's misrepresentations, the Products which Plaintiff and the putative class members received were worth less than the Products for which they paid, and they were injured in fact and lost money as a result of Defendant's improper conduct. *Id.* at ¶ 36.

Based on Defendant's false and misleading express representations on the packaging of each of the Products, Plaintiff has brought this class action on behalf of herself and those similarly situated alleging the following claims: violation of New York GBL § 349; violation of New York GBL § 350; violation of state consumer protection statutes; breach of express warranty; and violation of the Magnusson-Moss Warranty Act.

## III. ARGUMENT

### A. This Court has Personal Jurisdiction over the Claims of Class Members Nationwide

Defendant asks the Court to dismiss the claims of all class members outside the state of New York on the grounds that the Court does not have personal jurisdiction over Honky Tots with respect to those claims. Def. Mem. 3. This argument is premised on extending the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco*, 582 U.S. ___, 137 S. Ct. 1773, 1783,198 L. Ed. 2d 395 (2017), to federal class actions. But, as set forth below, *Bristol-Myers* does not apply to federal class actions.

*Bristol-Myers* involved a mass tort in state court and its holding does not apply to federal class actions for two basic reasons: First, the holding in *Bristol-Myers* expressly did not address whether its holding "would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." *Bristol-Myers*, 137 S. Ct. at 1789 n.4 (Sotomayor, J., dissenting). The claims of absent class members whom the named plaintiffs seek to represent under Rule 23 in this case do not implicate the same due process concerns as the individual plaintiffs did in *Bristol-Myers*. The law with respect to specific personal jurisdiction over defendants in class actions remains unchanged. Second, the *Bristol-Myers* holding specifically applies only to jurisdiction exercised by state courts over defendants for whom the state cannot assert general personal jurisdiction with respect to claims over non-resident plaintiffs under the Fourteenth Amendment. *Id*. at 1783-84 ("[S]ince our decision

3

concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restriction on the exercise of personal jurisdiction by a federal court."). Accordingly, the federalism concerns that underlie the Court's reasoning do not apply in federal court.

For those reasons, there is a consensus that *Bristol-Myers* does not apply to class actions in federal court. *See Sanchez v. Launch Technical Workforce Solutions, LLC*, No. 1:17-cv-01904 (N.D. Ga. Jan. 26, 2018) (holding that the "material differences between mass actions and class actions" prevented the court from extending the reasoning of *Bristol-Myers* to such cases); *Alvarez v. NBTY, Inc.*, No. 17-cv-00567-BGS, 2017 U.S. Dist. LEXIS 201159 (S.D. Cal. Dec. 6, 2017) (ruling that *Bristol-Myers* did not represent a change in the law regarding federal class actions); *Day v. Air Methods Corp.*, No. 5:17-183-DCR, 2017 LEXIS 174693 (E. D. KY. Oct. 23, 2017) (finding defendant's argument that a Kentucky district court did not have personal jurisdiction over the claims of nonresident plaintiffs in a wage and hour class action to be "misplaced because the inquiry for personal jurisdiction lies with the named parties of the suit asserting their various claims against the defendant, not the unnamed proposed class members."); *Harrison v. General Motors Company*, No. 17-3129-Cv-S-SRB (W.D. Mo. Sept. 25, 2017) (holding that *Bristol-Myers* does not apply to class actions or in federal court); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*, No. 17-cv-00564 NC, 2017 U.S. Dist. LEXIS 155654 (N.D. Cal. Sep. 22, 2017) ("[T]he Supreme Court did not extend its reasoning to bar the nonresident plaintiffs' claims here, and *Bristol-Myers* is meaningfully distinguishable based on that case concerning a mass tort action, in which each plaintiff was a named plaintiff."); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 09-2047, 2017 U.S. Dist. LEXIS, 197612 (E.D. La. Nov. 30, 2017) (holding that *Bristol-Myers* did not prevent the court from exercising personal jurisdictions over non-resident plaintiffs in a multidistrict litigation).

4

Defendant cites a single case which extended *Bristol-Myers* to federal class actions, *Spratley v. FCA US LLC*, No. 3:17-cv-0062, 2017 LEXIS 147492 (N.D.N.Y. Sep. 12, 2017). Def. Mem. 4. That case, however, did not engage in an analysis of the differences between class actions and mass torts and provides no substantive authority to support Defendant's motion. Rather, the *Spratley* court simply stated "Similarly, in this case, the out-of-state Plaintiffs have shown no connection between their claims and [defendant's] contacts with New York. Therefore, the Court lacks specific jurisdiction over the out-of-state Plaintiffs' claims." *Id* at *19. Indeed, other courts have specifically declined to follow *Spratley* on the grounds that it failed to distinguish between state mass torts and federal class actions. *See, e.g., Sanchez v. Launch Tech. Workforce Sols, LLC*, No. 1:17-cv-1904-ELR-AJB 2018 U.S. Dist. LEXIS 28907, *15 n.9 (N.D. Ga. Jan 26, 2018) (declining to follow *Spratley* because it "presume[es] that Bristol-Myers requires dismissal of non-residents class members' claims without explaining why Bristol-Myers would apply in a class-action suit").

In contrast, the recently decided *Sloan v. General Motors, LLC*, 16-cv-07244-EMC (C.D. Cal. Feb 7, 2018) thoroughly examined the issue. That case was a class action brought against General Motors in the Northern District of California by Plaintiffs who purchased defendant's vehicles in 28 different states. Defendant argued that *Bristol-Myers Squibb* required dismissal for lack of personal jurisdiction of all claims by non-California named plaintiffs who did not purchase their cars in California. The court rejected that argument, holding that that *Bristol-Myers* does not apply to federal courts, and went on to analyze personal jurisdiction over the claims of out-of-state class members under the traditional due process framework. *Id* at 13. Under that analysis, the court found that it could exercise personal jurisdiction over the out-of-state plaintiffs because 1) GM had availed itself of the privilege of conducting business in California; 2) the claims of the out-of-state plaintiffs had a sufficient nexus to the claims of the California plaintiffs; 3) in class action lawsuits the court has jurisdiction over absent class members who are non-forum residents; 4) the exercise of

personal jurisdiction over the non-resident plaintiffs' claims in this case will impose only a *de minimis* burden on GM; and 5) if the Court were to decline to exercise jurisdiction, GM would face piecemeal litigation and would have to defend itself in several different courts on nearly identical issue. *Id* at 16-17.

Honky Tots does not contest the well-pled allegation that it conducts business in New York or that this Court has jurisdiction over the claims of Ms. Suarez, who is a resident of New York. Consequently, under *Sloan* and most class cases analyzing *Bristol-Myers,* this Court has personal jurisdiction over the claims of absent class members nationwide.

## B. Plaintiff Has Standing to Seek the Relief She Requests

### 1. Plaintiff Has Standing to Seek Injunctive Relief

A recent decision in this District squarely addressed standing to pursue injunctive relief based on deceptive "natural" labels. In *Petrosino v. Stearn's Products, Inc.*, No. 7:16-cv-007735-NSR, 2018 U.S. Dist. LEXIS 55818, *11 (S.D.N.Y. March 30, 2018), Judge Roman held that "a Plaintiff in a consumer protection suit has standing to seek injunctive relief regardless of any promises to purchase the accused products in the future. Furthermore, 'if magic words are required,' a Plaintiff certainly has standing when they, as is the case here, assert that they will purchase a product in the future if the ingredients are changed so that the product is not mislabeled." *Id*. Like the plaintiff in *Petrosino*, Ms. Suarez alleged that she would purchase the Products in the future if they were actually "natural" as represented on the labels. Am. Compl. ¶ 35.

The *Petrosino* opinion indicates that there is a split of authority in the Second Circuit on whether a plaintiff in a consumer class action has standing to seek injunctive relief to correct misleading product labels and representations.[1] Courts concluding that standing exists generally

---

[1] Some courts reason that since the plaintiff knows about the misrepresentations, he or she is in no danger of being deceived in the future and lacks standing. *See Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 310 (S.D.N.Y. 2017) ("[A]bsent contrary guidance from the Supreme Court or the Second Circuit, precedent requires the Court to

reason that the inability to rely on the labels in the future constituted a threat of harm, or on the grounds that a contrary holding would mean no one would ever have standing to pursue injunctive relief. *See In re Amla Litig.*, No. 16-cv-6593, 2017 U.S. Dist. LEXIS 175950, at *40 (S.D.N.Y. Oct. 24, 2017) ("Plaintiffs cannot trust that the advertising on those products is accurate absent specific injunctions ordering defendants not to engage in false or misleading advertising and not to place products on the market without claim substantiation, or, indeed, as long as this harmful product remains on the shelves."); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374, 397-98 (S.D.N.Y. 2016) (following *Belfiore* and finding plaintiffs' statements that they would buy products again if they were properly labeled sufficient for standing); *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) (Weinstein, J.) ("Federal courts have held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer, because to hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief."); *Ackerman v. Coca-Cola Co.*, No. 09 CV 395, 2013 U.S. Dist. LEXIS 184232, at *56 (E.D.N.Y. July 17, 2013) ([T]o hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief.").

The only appellate court to squarely address the issue of whether a plaintiff has standing to pursue injunctive relief when that plaintiff has become aware the representations at issue are deceptive is the Ninth Circuit in its recent decision, *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103 (9th Cir. Oct. 20, 2017). Like the Second Circuit, there was a similar ("dramatic") split on the issue in the Ninth Circuit, which the court squarely addressed:

---

conclude that Plaintiff has no standing to seek injunctive relief."); *Reid v. GMC Skin Care USA Inc.*, No. 8:15-CV-277 (BKS/CFH), 2016 U.S. Dist. LEXIS 14001, at *17-18 (N.D.N.Y. Jan. 15, 2016) (collecting cases); *Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142, 158 (E.D.N.Y. 2015).

> We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm.
>
> *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1115 (9th Cir. 2017). The court recognized the flawed outcome that Honky Tot's position would create: "Were injunctive relief unavailable to a consumer who learns after purchasing a product that the product's label is false, . . . consumer protection laws would be effectively gutted . . .".

*Id.* (citations omitted). The court further reasoned that "Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to."[2]

That is exactly the posture in which Ms. Suarez finds herself with respect to Honky Tots products. She has alleged that if she:

> knew the Products' labels were truthful and non-misleading, she would continue to purchase the Products in the future. At present, however, Plaintiff cannot purchase the Products because she has no way to know that the labeling of the Products is, and will be, truthful and non-misleading. If the Products were actually "Natural," as represented on the product's labels, Plaintiff would purchase the Products in the immediate future.

AC ¶ 35.

Indeed, it was the absence of such an allegation that supported some Second Circuit district courts' findings that Article III standing did not exist. *See, e.g., Albert v. Blue Diamond Growers*,

---

[2] Although *Davidson* was decided under California law, the reasoning applies to this case. New York's GBL § 349, if anything, is broader in scope than California's Unfair Competition Law. *See James v. Penguin Grp. (USA) Inc.*, No. 13 Civ. 2801, 2014 U.S. Dist. LEXIS 50769, at *28 (S.D.N.Y. Apr. 11, 2014) ("New York's highest court endorsed a broad reading of the GBL § 349.... It stated that GBL § 349 "on [its] face appl[ies] to virtually all economic activity[] and [its] application has been correspondingly broad.") (quoting *Karlin v. IVF America, Inc.*, 93 N.Y.2d 282, 712 N.E.2d 662, 665 (N.Y. 1999); *id.* at *17 ("The UCL is a broad statute that prohibits business practices that constitute "unfair competition" which is defined as an unlawful, unfair, or fraudulent act, as well as an act of false advertising.").

151 F. Supp. 3d 412, 417-18 (S.D.N.Y. 2015) (holding that the plaintiffs, who did not allege they would purchase the deceptive product in the future, did not have standing to seek injunctive relief). Accordingly, even under the reasoning of some of the New York district courts which held that plaintiffs did not have standing Ms. Suarez might have been able to pursue injunctive relief.

### 2. Ms. Suarez's Claims Implicate The "Same Set of Concerns" And Are "Sufficiently Similar" To Those of Consumers of Products She Did Not Purchase

Defendant's argument concerning Plaintiff's standing to challenge Products she did not purchase fails for two reasons. First, this is a question for class certification and is not appropriate at the motion to dismiss stage. Second, the Products Plaintiff purchased are "substantially similar" to those she did not, and therefore she has standing to challenge each of the Products in the Amended Complaint.

It is premature at this stage to determine whether Plaintiff can assert claims for similar products she did not purchase. *See Ault v. J.M. Smucker* Co., No. 13 Civ. 3409, 2014 U.S. Dist. LEXIS 67118 (S.D.N.Y. May 15, 2014) ("Whether the plaintiffs' injuries are sufficiently similar to those of the putative class members who purchased other products - and whether plaintiffs will therefore adequately represent the interests of the class - is a question the Court will consider on a Rule 23 certification motion.") (internal quotation marks omitted); *see also Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*, 148 F. Supp. 3d 285 (S.D.N.Y. 2015) ("Article III standing is a separate issue from that of 'class standing'. . . Thus, 'for every named defendant there must be at least one named plaintiff who can [*13] assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis.'"); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM)(RLM), 2013 U.S. Dist. LEXIS 123824, at *40 (E.D.N.Y. Aug. 29, 2013) ("because plaintiffs have satisfied the Article III standing inquiry, their ability to represent putative class members who purchased products plaintiffs have not themselves purchased is a question for a class certification motion.").

Indeed, in the recently decided *Petrosino* case, Judge Roman felt "compelled to follow the approach of other decisions in this circuit and the Court's own precedent" and declined to analyze standing to challenge unpurchased products at the motion to dismiss phase. *Id. at* *13.

Defendant cites to *Goldemberg v. Johnson & Johnson Consumer Co.*, Inc., 317 F.R.D. 374 (2016) where the Court analyzed whether Plaintiff had class standing. As the Court noted in *Petrosino*, however, *Goldemberg* only required the class standing analysis because in that case, unlike here, a motion for class certification was before the Court. *Id.*

In any event, even if the Court were to engage in a standing analysis regarding the unpurchased products at this stage, "a named plaintiff has standing to bring class action claims under state consumer laws protection for products that he did not purchase, so long as those products, and the false and deceptive manner in which they were marketed, are sufficiently similar to the products that the named plaintiff did purchase." *Bautista v. Cytosport, Inc.*, 223 F. Supp. 3d 182, 188 (S.D.N.Y. 2016) (citations and internal quotation marks omitted); *See also Quinn v. Walgreen Co.*, 958 F. Supp. 2d 553, 541 (S.D.N.Y. 2013) ("The majority of the courts that have carefully analyzed the question hold that [standing exists] so long as the products and alleged misrepresentations are substantially similar.") (citing *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012)). Here, as alleged in the Complaint, the Products Ms. Suarez purchased are substantially similar to those she did not purchase. Indeed, every single one of the challenged Products bears a label with the adverb "naturally" or the adjective "natural."[3] Thus, unlike *DiMuro v. Clinique Labs, LLC.*, 914 F.Supp.2d 601 (S.D.N.Y. 2012), and *Goldemberg*, Honky Tots did not make "different advertising claims for each product." Rather, the misrepresentations are nearly identical across each of the 32 products at issue. And, light syntactic

---

[3] The only difference among the representations on the 32 products is the subject which is being modified by "natural" or "naturally" (i.e. "pregnancy" vs. "hair gel").

variations on product labels do not defeat class standing. *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 553, 5421 (S.D.N.Y. 2013).

In *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555 (S.D.N.Y. 2016), the plaintiff purchased two of 41 hair care products at issue. The representations on the containers were "natural," "all natural," "naturally derived," "plant based" and/or "containing no harsh chemicals ever!". The representations the plaintiff relied upon were only the "natural" and "no harsh chemicals ever!" representations. *Id.* at 559. After reviewing the Second Circuit's decisions in *NECA-IBEW* and *DiMuro v. Clinique Labs., LLC*, 572 Fed. App'x 27 (2d Cir. 2014*)*, the court concluded "Although the unpurchased products may contain different ingredients compared to the purchased products…the misrepresentations claimed with respect to the unpurchased products is sufficiently similar to the misrepresentation for the purchased products." *Buonasera* at 563. *See also Quinn v. Walgreen Co.*, 958 F. Supp. 2d 553, 5421 (S.D.N.Y. 2013) (holding that while the six glucosamine supplements at issue had two slightly different representations and the products "var[ied] in formulation, strength and quantity," "nearly identical" alleged misrepresentations on the label of the supplements sufficed for class standing); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097 (S.D.N.Y. Aug. 12, 2016) (concluding that differences in the advertisements of a line of dog treats that featured bacon did not eliminate subject matter jurisdiction "particularly when the Second Circuit [in *NECA-IBEW*] did not find variation in risk profiles, interest rates, maturity, and subordination sufficient" to dismiss a securities class action).

Accordingly, while substantial similarity is an issue appropriate for resolution at the class certification stage, the court can rule now -- if it is so inclined -- that the unpurchased products are substantially similar to the purchased products.

### 3. Whether Plaintiff Can Represent Out of State Residents Is an Issue for Class Certification and is not Appropriate for Resolution at the Motion to Dismiss Stage

Defendant next contends that Plaintiff cannot pursue claims for proposed class members under the laws of states in which she does not reside. Def Mem. 8. While Defendant couches this as a standing issue, in reality, Defendant is seeking to prematurely challenge class certification. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case"). In other words, "[a]pplication of choice-of-law principles has nothing to do with standing." *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011).

Further, since the analysis for class standing significantly overlaps the typicality, commonality and adequacy requirements under Rule 23, courts have held it is appropriate to wait until class certification to evaluate class standing. *See, e.g., Kurtz v. Kimberly-Clark Corp.,* 321 F.R.D. 482, 543 (E.D.N.Y. 2017) (finding class standing at class certification stage "for the same reason's [plaintiff's] claim is typical"); *Forcellati v. Hyland's Inc.*, 876 F. Supp. 2d. 1155, 1161 (C.D. Cal. 2012) ("The weight of authority views this issue under the lens of typicality or adequacy of representation, rather than standing.") (internal quotations omitted); *Kaatz v. Hyland's Inc.*, No. 16 CV 237 (VB), 2016 U.S. Dist. LEXIS 87348 (S.D.N.Y. July 5, 2016) ("Here, it is appropriate to defer a resolution of plaintiffs' standing until the class certification stage because class certification issues are the source of any potential standing problems"). Consequently, as long as Article III standing exists, courts defer the class standing analysis to the class certification stage.

The Second Circuit's decision in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) ("*NECA-IBEW*"), is controlling. In that case, the Second Circuit held that "to establish Article III standing in a class action for every named defendant there must be

at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied . . . ." *NECA-IBEW*, 693 F.3d at 159. After standing is established, "the inquiry shift[s] to a class action analysis." *Id.*; *see also Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154, 161 (2d Cir. 2014) (discussing *NECA-IBEW* and stating that "[t]he core question is whether a plaintiff who has a personal stake in proving her own claims against the defendant has a sufficiently personal and concrete stake in proving other, related claims against the defendant").

 *Sitt v. Nature's Bounty, Inc.* is also on point. The plaintiff in *Sitt* challenged "natural" label misrepresentations on behalf of herself and a proposed class of residents from a number of different states. *Sitt v. Nature's Bounty,* Inc., No. 15-CV-4199 (MKB), 2016 U.S. Dist. LEXIS 131564, *3 (E.D.N.Y. Sept. 26, 2016) The defendant in *Sitt* moved to dismiss and argued that the plaintiff, as a New York resident, did not have standing to bring claims on behalf of consumers from other states. *Id.* In rejecting the defendant's argument, the court stated:

> Thus, because Plaintiff has standing to assert a claim directly against each of the named Defendants, Plaintiff has satisfied the Article III standing requirement for class actions. Defendants argue that Plaintiff bears a burden within the Article III analysis to further establish standing to bring claims under the law of every other state in the nationwide class by providing "particularized allegations" of the claims of consumers in other states. However, based on the Second Circuit's clear pronouncement of Article III standing in *NECA-IBEW*, Plaintiff has no further burden to demonstrate Article III standing. Plaintiff has sufficiently stated a cognizable injury by Defendants and has therefore established Article III standing.

*Id.* at *4.[4]

---

[4] Further, at least two courts interpret *NECA-IBEW* as limiting the inquiry at the pleading stage to Article III standing and *requiring* the class standing analysis to wait until class certification. In *Segovia v. Vitamin Shoppe, Inc.*, No. 14-CV-7061, 2016 U.S. Dist. LEXIS 15171 (S.D.N.Y. Feb. 5, 2016) the court held that the question of whether plaintiffs could represent purchasers of a dietary supplement with "nearly identical" representations "*must*, under *NECA-IBEW*, be addressed at class certification." *Id.* at *7-8 (emphasis added). Further, in *Frito-Lay*, 2013 U.S. Dist. LEXIS 123824 *40, the court stated that "*NECA-IBEW* thus instructs that, because plaintiffs have satisfied the Article III standing inquiry, their ability to represent putative class members who purchased products plaintiffs have not themselves purchased is a question for a class certification motion.").

Rather than support its position, the cases cited by Defendant undercut its argument and reinforce the idea that the standing inquiry is distinct from, and precedes, the class certification inquiry. Def Mem. at 9. *See, e.g., Fort Worth Empls. Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 333 (S.D.N.Y. 2012) ("It is also important not to collapse the standing inquiry into the class certification inquiry. Courts in this District have long made clear that 'the Article III standing determination should precede that of class certification.'") ((quoting *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 605 (S.D.N.Y. 2006)); *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 376-377 (E.D.N.Y. 2010) ("Under the guise of standing, defendant has raised the issues of adequacy of the representatives and whether there are common questions of law or fact that predominate over any questions affecting only individual members . . . These are issues to be addressed at the class certification stage.") (quoting *Ramirez v. Dollar Phone Corp.*, No. 09-CV-2290, 2009 U.S. Dist. LEXIS 92972, 2009 U.S. Dist. LEXIS 92972, (E.D.N.Y. Oct. 1, 2009)).

## C. Plaintiff's Complaint Adequately Alleges Defendant's Deception

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)); *see also Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiff alleges Defendant's "Natural" and "Natural Cleansers" labeling is materially misleading. The New York Court of Appeals has

established an objective standard for determining whether acts or practices are materially deceptive or misleading to "a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). The reasonable consumer determination is generally a question of fact, which is not appropriate for a motion to dismiss. *Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015); *Goldemberg*, 8 F. Supp. 3d at 478; *see also Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) ("[W]hether a particular act or practice is deceptive is usually a question of fact.").

Defendant advances the tenuous argument that its "Natural" labeling cannot, *as a matter of law*, deceive a reasonable consumer into believing that the Products contain exclusively natural ingredients. Def. Mem. 11. This argument, however, is completely at odds with well-settled law in this Circuit. *See Sitt v. Nature's Bounty,* Inc, 2016 U.S. Dist. LEXIS 131564, at *43-44 (E.D.N.Y. Sep. 26, 2016) (holding that "although Defendants are correct that [their] representations do not promise that the Product is "all" or "100%" natural, a reasonable consumer could assume that the Product contains only natural ingredients...The fact that the fine print on the back of the labeling could indicate to a consumer that other ingredients were not "natural" does not render another conclusion so patently or objectively unreasonable so as to warrant dismissal as a matter of law based on the reasonable consumer prong."); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 2014 U.S. Dist. LEXIS 47180 (S.D.N.Y Mar. 27, 2014) (rejecting motion and holding that a reasonable consumer could interpreted "Active Naturals" to mean that the product was completely natural); *Petrosino v. Stearn's Products, Inc.*, No. 7:16-cv-007735-NSR, 2018 U.S. Dist. LEXIS 55818, *11 (S.D.N.Y. March 30, 2018) ("The question of whether Defendant's label is actually misleading to a reasonable consumer as a matter of law, is a question of fact better suited for the jury."); *Silva v. Smucker Natural Foods, Inc.*, No. 14-CV-6154 RML, 2015 U.S. Dist. LEXIS 122186, at *24

(E.D.N.Y. Sept. 14, 2015) (rejecting defendant's argument that, as a matter of law, no reasonable consumer could be misled by the representation "Natural Brew"); *Frito-Lay*, 2013 U.S. Dist. LEXIS 123824, at *29 (holding that "what a reasonable consumer would believe the term 'natural' to mean cannot be resolved on [a] motion [to dismiss]," as it is a "factual dispute").

Indeed, one court recently held that the issue could not even be decided at the summary judgment stage. *Luib v. Henkel Consumer Goods, Inc.*, No. 17-cv-0302-BMC, 2018 U.S. Dist. LEXIS 18598 (S.D.N.Y. Feb. 5, 2018) ("[w]hether or not the 'Natural Elements' label is materially misleading turns on whether a factfinder determines that a reasonable person would be misled by this label into thinking that the Products contain no synthetic elements . . . I cannot say that it would unreasonable as a matter of law for a factfinder to come out one way or the other on this issue, and thus the inquiry is a factual one.").

Next, Defendant attacks Plaintiff's descriptions of the synthetic ingredients using its own interpretation of FDA policies regarding food. However, Plaintiff has gone far beyond what is necessary to state a claim under *Iqbal* and *Twombly*, and offers a description of the chemistry and manufacturing processes for the ingredients at issue in the case. *See, e.g.*, *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 U.S. Dist. LEXIS 131564, at *40-44 (E.D.N.Y. Sep. 26, 2016) (claim stated where plaintiff only alleged "natural" product contained magnesium stearate); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029 (NSR), 2015 U.S. Dist. LEXIS 60739 at *30 (S.D.N.Y. May 7, 2015) ("[I]t is enough that Plaintiffs allege only that "natural" communicates the absence of synthetic ingredients."); *Aguiar v. Merisant Co.*, No. 14-00670, 2014 U.S. Dist. LEXIS 165301 at *10 (C.D. Cal. March 24, 2014) (finding that allegations that ingredients isomaltulose and dextrose were "synthetic" as term used in dictionary required "no further factual enhancements" to state claim); *Janney v. General Mills*, No. 12-cv-03919, 2014 U.S. Dist. LEXIS 41452 *9 (N.D. Cal. Mar. 26, 2014) (claim stated where plaintiff only alleged "natural" product continued high fructose corn syrup,

high maltose corn syrup and maltodextrin); *Jou v. Kimberly-Clark Corp.*, 13-03075 JSC, 2013 U.S. Dist. LEXIS 173216, at *5-8 (N.D. Cal. Dec. 10, 2013) (claim stated where plaintiff only alleged "pure & natural" product contained polypropylene and sodium polyacrylate).

Accordingly, it is a question of fact as to whether a reasonable consumer could interpret Defendant's repeated use of the phrases "natural" and "naturally" as conveying the Products do not contain synthetic ingredients, and Defendant's motion should be denied.

### D. Defendant's Misrepresentations Are Not Mere Puffery

Defendant next moves to dismiss Plaintiff's claims regarding the phrases "safe♥natural♥fun," "natural pregnancy," and "naturally perfect for the whole family,"[5] as non-actionable puffery. *See* Def. Mem. at 20. Courts have explicitly rejected this argument. For example, in *Petrosino v. Stearn's Products, Inc.*, the defendant argued—as Defendant does here—the term "natural" was nonactionable puffery." *See Petrosino*, 2018 U.S. Dist. LEXIS 55818, at *22, n.6. The court rejected this argument, holding "the term 'natural' is an affirmative claim about the product's qualities and is, therefore, not 'an exaggeration or overstatement expressed in broad, vague, and commendatory language.'" *Id.* (quoting *Ault v. J.M. Smucker Co.*, No. 13 Civ. 3409, 2014 U.S. Dist. LEXIS 67118 (S.D.N.Y. May 15, 2014)); *see also Singleton v. Fifth Generation, Inc.*, No. 5:15-CV-474 (BKS/TWD), 2017 U.S. Dist. LEXIS 170415, at *51, n.18 (N.D.N.Y. Sept. 27, 2017) (rejecting the defendant's claim that "handmade" was puffery since there was no industry or government definition and a reasonable consumer could adopt the plaintiff's definition); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, at *63-64 (S.D.N.Y. Aug. 12, 2016) (references to "BacoNology" were not puffery since the court could not hold as a matter of law the phrase "was not 'misleading in a material way'"); *Ackerman v. Coca-Cola Co.*, CV-09-0395 (JG) RML), 2010 U.S.

---

[5] Defendant makes no argument with regard to the other "natural representations" on its Products, including "natural hair gel," "natural starches," and "Natural Bug Repellant," which are clearly not mere puffery.

17

Dist. LEXIS 73156, at *67-68 (E.D.N.Y. July 21, 2010) (denying motion to dismiss product labeling claims as puffery where the court could not say as matter of law a reasonable consumer would not rely on them).[6]

Like in *Petrosino*, *Paulino*, and *Bounasera*, a reasonable consumer could interpret Defendant's repeated use of the phrases "natural" and "naturally" as conveying the Products do not contain synthetic ingredients. As this determination is a question of fact, it is inappropriate for resolution at this stage. Accordingly, Defendant's motion should be denied.

### E. Knowledge and Intent to Deceive are Not Elements of a NY GBL Section 349 Claim

Defendant moves to dismiss Plaintiff's GBL § 349 claim on the grounds that "the Complaint does not contain a single allegation of how CNL 'knew' or even had a reason to know its use of the word 'natural' within the context of the labels was false or deceptive." Def. Mem. at 21. However, it is well settled that "[a] plaintiff is not required to establish intent to mislead" to plead a claim under GBL § 349. *Stolz v. Fage Dairy Processing Indus., S.A.*, 14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS 126880, at *66 (E.D.N.Y. Sept. 2015); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (N.Y. 1995) ("it is not necessary under the statute that a plaintiff establish the defendant's intent to defraud or mislead"); *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55 (N.Y. 1999) ("Intent to defraud and justifiable reliance by the plaintiff are not elements of the statutory claim"). Thus, whether the Complaint contains allegations evincing Defendant's knowledge of the deceptiveness of its "natural" claims is an irrelevant inquiry on a 12(b)(6) motion, much less grounds on which to dismiss the claim.

---

[6] Several New York courts have drawn the conclusion that "natural" claims are factual and not opinion. *Paulino*, No. 14-CV-5145 JG RML, 2015 U.S. Dist. LEXIS 108165, at *1 (E.D.N.Y. Aug. 17, 2015) ("I cannot say that a reasonable consumer could not interpret "Naturals" to be a factual claim about the Suave NATURALS line of products." *Id.* at *7); *Bounasera v. Honest Co.*, 208 F. Supp. 3d 555, 559 (S.D.N.Y. 2016) (denying motion to dismiss because a reasonable consumer interpretation of "natural" claims on shampoos, conditioners, and other personal care products as factual or opinion was a question of fact).

Defendant seeks to read the knowledge requirement into the statute by taking out of context a single quoted passage from the district court opinion in *Woods v. Maytag Co.*. *See* Def. Mem. at 21 (quoting *Woods v. Maytag Co.*, No. 10-CV-0559, 2010 U.S. Dist. LEXIS 116595, at *44 (E.D.N.Y. Nov. 2, 2010)). In *Woods*, however, the issue was not whether the plaintiff had pled that the defendant had knowledge of the deception, but rather, "the determinative issue [was] whether Plaintiff [had] set forth enough facts to support the contention that the alleged deceptive act or practice *plausibly could have occurred*." *Id.* at *43-44 (emphasis added). In that case, plaintiff's only factual assertion in support of the claim was: "upon information and belief . . . defendant, Maytag . . . expressly warranted to the general public and to the Plaintiff, through the [I]nternet, by advertisement literature and other means that consumers could safely use the product for the purpose of cooking." The court concluded that the vague allegations "that Defendant 'knew' of the alleged defect" were insufficient "to provide enough factual support to plausibly support the contention that a deceptive act or practice has taken place." *Id.* at *44. Thus, the *Wood* decision did not establish a knowledge requirement for GBL § 349 claims, but merely reiterated the need to plausibly plead that a deceptive act occurred. In stark contrast to *Wood*, Defendant does not, nor could it, deny that the "natural" statements appeared on its label.

**F. Reliance is not an Element of a NY GBL § 350 Claim**

Contrary to Defendant's argument, a GBL § 350 claim does not have a reliance requirement. *Koch v. Acker, Merral & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. 2012) ("To the extent the Appellate Division order imposed a reliance requirement on General Business Law §§ 349 and 350 claims, it was error."); *see also In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015) ("neither Section 349 nor 350 require proof of reliance"). Since Defendant's position rests on a misstatement of the law, *Koch* is dispositive of its argument and its motion should be denied.

Nevertheless, some federal courts have continued—as Defendant would have this Court do— to read a reliance requirement into GBL § 350 claims. *See e.g. Daniel v. Mondelez Int'l, Inc.*, 17-CV-

00174 (MKB), 2018 U.S. Dist. LEXIS 31074, at *14, n.6 (E.D.N.Y. Feb. 26, 2018) (requiring reliance for a GBL § 350 claim); *Tyman v. Pfizer, Inc.*, 16-CV-06941 (LTS) (BCM), 2017 U.S. Dist. LEXIS 212879, at *61-62 (S.D.N.Y. Dec. 27, 2017) (same). To the extent, *arguendo*, the Court takes this position, the requirement is easily satisfied here. In *Tyman*, for instance, plaintiff brought suit against a manufacturer for the use of "100% NATURAL" on its chapstick products. In moving to dismiss, the defendant argued plaintiff failed to plead reliance under GBL § 350. *Id.* The court rejected this argument, stating "plaintiffs have adequately alleged facts which, if proven, would support the reliance and causation elements of their claims: that they 'saw and read' the labels, and that in making their purchase they 'relied upon' the alleged misrepresentations made on those labels." *Id.* Here, Plaintiff pled that she relied upon the "Natural'" and "Natural Cleaners" representations in making her purchase. Am. Compl. ¶¶ 34-36. Thus, even under *Tyman*, Plaintiff has adequately alleged reliance.[7]

Defendant further argues that Plaintiff's reliance was unreasonable by pointing to the lack of a "formal standard" from the FTC or FDA as proof that the definition of "natural" is an opinion. *See* Def. Mem. at 22. Nevertheless, "[w]hile any FDA views on what 'natural' means may be relevant to the [reasonable consumer] inquiry, they are not dispositive." *Ault*, 2014 U.S. Dist. LEXIS 67118, at *18-19. This is essentially a retread of Defendant's argument that no reasonable consumer could rely on the "natural" representations to mean that the Products are free from synthetic ingredients. As demonstrated above, however, reliance is not an element of a GBL§ 350 claim. And, in any event, how a reasonable consumer would interpret a "natural" claim cannot be determined on a motion to dismiss. *See* Section III.C. *supra*.

---

[7] The sole case Defendant points to in support of its argument is *Glazer v. LoPreste*, 717 N.Y.S.2d 256 (2d. Dep't. 2000). However, *Glazer* involved an expression of opinion in a fraudulent nondisclosure in a real estate transaction, not GBL § 350, or mislabeled consumer products. *Glazer*, 717 N.Y.S.2d at 257. Thus, *Glazer* is in no way instructive on the matter before the Court, and *Koch* governs the § 350 analysis.

## G. Plaintiff Has Stated a Claim for Breach of Express Warranty

### 1. Plaintiff is not Required to Show Privity with the Defendant

Defendant further argues that Plaintiff's express warranty claim under New York law must fail because Ms. Suarez is not in privity with Honky Tots. Def. Mem. at 23.

First, as explained by the court in *Sitt* and in *Mahoney v. Endo Health Solutions, Inc.,* No. 15-CV-9841, 2016 U.S. Dist. LEXIS 94732 (S.D.N.Y. July 20, 2016), the New York Court of Appeals has long since dispensed with the privity requirement where the plaintiff seeks only economic damages. *Mahoney* at *16-19 (citing *Randy Knitwear, Inc. v. Am. Cyanamid Co.*, 11 N.Y.2d 5, 16 (1962), *Jesmer v. Retail Magic, Inc.*, 863 N.Y.S.2d 737, 739 (2d. Dep't. 2008) and *Murrin v. Ford Motor Co.*, 756 N.Y.S.2d 596, 597 (2d. Dep't. 2003)). Here, Defendant acknowledges that Ms. Suarez is only seeking economic damages. Def Mem. 23; Am Compl. ¶ 29.

Second, courts have held that where plaintiff challenges a representation made by a defendant on a product label or advertisement, the plaintiff need not be in privity with the defendant. *See Goldemberg,* 8 F. Supp. 3d at 482 (holding with respect to "natural" label, "A buyer may bring a claim against a manufacturer from whom he did not purchase a product directly, since an express warranty may include specific representations made by a manufacturer in its sales brochures or advertisements."); *Brady v. Basic Research, LLC*, 101 F.Supp. 3d 217, 235 (E.D.N.Y. 2015) (express warranty claim based on challenge to supplement labels upheld); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 295 (S.D.N.Y. 2015) (breach of warranty claim based on challenges to advertising and product packaging of cold remedy upheld)  Here, plaintiff is challenging representations on the labels of the products. Comp.¶¶ 1-3, 6.

Defendants cite to *Koenig v. Boulder Brands, Inc*., 995 F. Supp. 2d 274 (S.D.N.Y. 2014) and *Ebin v. Kandangis Food Inc.*, No. 13 Civ. 2311, 2013 U.S. Dist. LEXIS 174174 (S.D.N.Y. Dec. 9, 2013) for the proposition that privity is required in a breach of express warranty claim. Def. Mem.

23. But these cases are outliers on this issue and their reasoning is rarely followed. *See Weisblum* at 295 (declining to follow *Koenig* and explaining "courts have held that a plaintiff need not be in privity with a defendant to bring such a [express warranty] claim based on misrepresentations contained in public advertising or sales literature"); *see also Mahoney* at 19 (declining to follow *Koenig*); *Sitt* at 52 (declining to follow *Koenig* and *Ebin*); *In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Practices & Prods. Liab. Litig.*, No. MD 16-2695 JB/LF, 2017 U.S. Dist. LEXIS 210549, at *338 (D.N.M. Dec. 21, 2017) (finding "The Court of Appeals of New York has concluded that privity is not required against a manufacturer or the advertiser for economic loss" and declining to follow *Koenig* and *Ebin*). Since privity is not a requirement of plaintiff's express warranty claim, that claim should not be dismissed.

Next, Defendant contends that "natural," as used on the Products' labels, is a "generalized phrase" which could not be interpreted as a factual claim by a reasonable consumer, and therefore does not constitute an express warranty. Def Mem. 23. Contrary to Defendant's characterization, to prevail on a breach of express warranty claim under New York law, a plaintiff simply must show "an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon." *Atik v. Welch Foods, Inc.*, No. 15-CV-5405, 2016 U.S. Dist. LEXIS 136056 *23 (E.D.N.Y. Sept. 30, 2016) (quoting *Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC*, 382 Fed. Appx. 110, 111-12 (2d Cir. 2010)). "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y. U.C.C. LAW § 2-313(1)(b). Here, Plaintiff alleges Defendant's prominent use of "Natural" on the Products' labeling promises that the Products contain only natural ingredients.

## 2. Plaintiff Provided Defendant with Pre-Suit Notice of its Breach

Plaintiff's pre-suit notice of Defendant's breach was not deficient in any way. Def Mem. 24. The notice requirement only requires plaintiffs to "alert [Defendant] that the transaction [was] troublesome and [does] not need to include a claim for damages or threat of future litigation." *Cliffstar Corp. v. Elmar Indus., Inc.*, 254 A.D.2d 723, 724 (1998) (quoting *Computer Strategies, Inc. v. Commodore Business Machines, Inc.*, 105 A.D.2d 167, 176 (N.Y. App. Div. 1984).

Plaintiff mailed Defendant a pre-suit notice letter on June 2, 2017, prior to filing the original complaint in this case. Am. Compl. ¶ 90. Attached to that letter was a draft complaint which asserted a cause of action for, *inter alia*, breach of express warranty and identified each of the Honky Tots Products to which that claim applied. Plaintiff's letter and draft complaint thus provided the Defendant with all the information it needed to remedy the breach and was more than sufficient under New York law to provide Defendant with notice. *See Paulino v. Conopco, Inc.*, No. 14-CV-5145 JG RML, 2015 U.S. Dist. LEXIS 108165, at *3-5 (E.D.N.Y. Aug. 17, 2015) (holding that a letter on behalf of a national class of consumers and a draft complaint containing a cause of action for breach of express warranty is sufficient to meet the liberal notice requirements under the New York UCC). Plaintiff filed a complaint materially indistinguishable from draft complaint after Defendant failed to correct its breach.

Accordingly, Plaintiff has properly pled an express warranty claim, and Defendant's motion should be denied.

## H. Plaintiff's Magnuson-Moss Warranty Act Claim Should Not Be Dismissed

Defendant argues for dismissal of plaintiff's Magnuson-Moss Warranty Act claim because the representations at issue do not constitute "warranties" under 15 U.S.C. 2301(6)(A). Although the MMWA provides a federal class action remedy for express and implied breach of warranty claims, it "merely incorporates and federalizes state-law breach of warranty claims". *Brady* at 234

(citations and quotations marks omitted). "[C]laims under the Magnuson-Moss Act stand or fall with [plaintiffs'] express and implied warranty claims under state law. Therefore, th[e] disposition of [] state law warranty claims determines the disposition of the Magnuson-Moss Act claims." *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir. 1986) (holding that state law governs implied warranty claims under the MMWA); *see also Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006) (holding that a breach of express warranty under the MMWA is coextensive with New York State law). *See also Sitt* at 57 (denying motion to dismiss MMWA claim where plaintiff stated an express warranty claim); *Brady* at 235 (same).

Under New York law, any "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty." *Frito-Lay* at 84 (citing N.Y.U.C.C. Law § 2-313(1)(a)). The term "natural" is such an "affirmation of fact." In *Frito-Lay*, the court agreed with the reasoning in *Vicuna v. Alexia Foods, Inc.*, No. 11-CV-6119, 2012 U.S. Dist. LEXIS 59408 at *6 (N.D. Cal. Apr. 27, 2012), which held that an "All Natural" designation was a "statement of fact" about the product and constituted an express warranty. *Id.* Similarly, in *Ault v J.M Smucker Co.*, 2014 U.S. Dist. LEXIS 67118 (S.D.N.Y. May 15, 2014), the court held that a representation relative to whether a product is "natural" constitutes "an actionable warranty" and that "a buyer may bring a claim against a manufacturer from whom he did not purchase a product directly, since an express warranty may include specific representations made by a manufacturer in its sales brochures or advertisements." *Id.* at *20-21. Since plaintiff's representations constitute an express warranty under New York law, they also constitute one under the MMWA, and this cause of action should not be dismissed.

## IV.  CONCLUSION

Based on the foregoing, Plaintiff respectfully requests the Court deny Defendant's motion to dismiss in its entirety.

Dated:  April 5, 2018                              Respectfully submitted,

By:      */s/ Jason Sultzer*
         Jason P. Sultzer, Esq.
         Joseph Lipari, Esq.
         Adam Gonnelli, Esq.
         **THE SULTZER LAW GROUP**
         85 Civic Center Plaza, Suite 104
         Poughkeepsie, New York 12601
         Tel: (845) 483-7100
         *sultzerj@thesultzerawgroup.com*

         Melissa S. Weiner, Esq.
         **HALUNEN LAW**
         1650 IDS Center
         80 South Eight Street
         Minneapolis, Minnesota 55402
         Telephone: (612) 605-4098
         *weiner@halunenlaw.com*