UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
PAMELA SUAREZ, individually on behalf of :
herself and all others similarly situated, :
              Plaintiff, :
               :  **OPINION AND ORDER**
v. :
               : 17 CV 9847 (VB)
CALIFORNIA NATURAL LIVING, INC., :
d/b/a CALIFORNIA BABY + KIDS, :
              Defendant. :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Pamela Suarez brings this putative class action against defendant California Natural Living, Inc., d/b/a California Baby + Kids, claiming defendant engaged in deceptive marketing and sales of cosmetics products that defendant allegedly misrepresented to be natural or contain natural cleansers. Plaintiff alleges defendant's false representations induced her and the putative class members to purchase the products at premium prices.

      Plaintiff, a New York citizen, brings three claims on behalf of a putative nationwide class and two claims on behalf of a putative New York subclass. She seeks damages, preliminary and permanent prospective injunctions, costs, and fees.

      Defendant moves to dismiss the claims of the putative nationwide class pursuant to Rules 12(b)(1) and 12(b)(2), and to dismiss the claims of the putative New York subclass pursuant to Rules 12(b)(1) and 12(b)(6). (Doc. #28).

      For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

      The Court has subject matter jurisdiction under 28 U.S.C. § 1332(d).

1

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.

Plaintiff claims defendant engaged in deceptive and misleading business practices respecting sales and marketing of thirty-two cosmetics products, including bubble baths, shampoos and body washes, hair conditioners, hair gel, spritzers, soothing spray, cream, bug repellent, and sunscreen (collectively, the "products").[1]

Plaintiff allegedly purchased three of the thirty-two products—California Baby Calendula Shampoo & Body Wash, California Baby Natural Pregnancy Nourishing Cream, and California Baby Calming Bubble Bath—"online and/or from a retail store" in New York. (Am. Compl. at

---

[1] The products are: California Baby Calming Bubble Bath, California Baby Natural Pregnancy Nourishing Cream, California Baby Super Sensitive Shampoo & Body Wash, California Baby Calming Shampoo & Body Wash, California Baby Calming Bubble Bath & Body Wash, California Baby Calendula Shampoo & Body Wash, California Baby Tea Tree & Lavender Shampoo & Body Wash, California Baby Eucalyptus Ease Shampoo & Body Wash, California Baby Swimmer's Defense Shampoo & Body Wash, California Baby Overtired & Cranky Shampoo & Body Wash, California Baby #supersensitive Shampoo & Body Wash, California Baby #chillax Shampoo & Body Wash, California Baby Chamomile & Mint Shampoo & Body Wash, California Baby Tea Tree & Lavender Hair Conditioner, California Baby Swimmer's Defense Hair Conditioner, California Baby Overtired & Cranky Hair Conditioner, California Baby Calming Hair De-Tangler, California Baby Calming Jelly Mousse Natural Hair Gel, California Baby Overtired & Cranky Jelly Mousse Natural Hair Gel, California Baby Super Sensitive Bubble Bath, California Baby Calendula Bubble Bath, California Baby Chamomile & Herbs Bubble Bath, California Baby Light & Happy Bubble Bath, California Baby Party! Bubble Bath, California Baby Calming Everywhere Spritzer, California Baby Eucalyptus Ease Everywhere Spritzer, California Baby Overtired & Cranky Everywhere Spritzer, California Baby I Love You Everywhere Spritzer, California Baby Aloe & Arnica Soothing Spray, California Baby Natural Bug Blend Bug Repellent, California Baby Calming Diaper Area Wash, and California Baby Super Sensitive Broad Spectrum SPF 30+ Sunscreen Stick.

45 ¶ 33).² She claims defendant violated (i) the New York General Business Law ("GBL") § 349, (ii) GBL § 350, (iii) thirty-six states' consumer protection statutes, (iv) all fifty states' statutes prohibiting breach of express warranty, and (v) the federal Magnuson-Moss Warranty Act (the "MMWA"), 15 U.S.C. § 2301 et seq.

According to plaintiff, defendant markets and advertises the products to "appeal to health conscious consumers" by describing the products as "Natural" or containing "Natural Cleansers." (Am. Compl. ¶ 2). The amended complaint contains photos of each of the product's front labels, thirty-one of which contain the word "natural" and the other one of which says "naturally perfect for the whole family." (See id. at 5–36). Plaintiff also alleges many of the products' labels include an illustration of the sun and a green and blue band and describe the products as "100% Natural Base" and containing "Organic Ingredients." (Id. ¶ 7). Defendant's website allegedly displays each product's label and "emphasizes the 'natural' aspects of the [p]roducts" by claiming they contain "Plant-based Ingredients" and "No synthetic fragrances." (Id. ¶ 8).

Defendant's designation of each product as "natural" is allegedly false, deceptive, and misleading, because each product contains one or more of ten allegedly synthetic ingredients.³

According to plaintiff, a reasonable consumer would be deceived by defendant's descriptions of the products as "natural," a term plaintiff claims a reasonable consumer would understand to mean "free of synthetic ingredients." (Am. Compl. ¶ 13). The amended complaint

---

² Citations to "Am. Compl. at ___" refer to page numbers automatically assigned by the Court's Electronic Case Filing system. The complaint mistakenly contains multiple paragraphs numbered "33" through "37."

³ These ingredients are: lauryl glucoside, panthenol, decyl glucoside, tocopherol, glyceryl stearate (stearic acid), xanthan gum, titanium dioxide, cetyl alcohol, sodium benzoate, and glycerin (vegetable).

3

further asserts a reasonable consumer could not practicably test or verify whether the products are in fact natural, in part because such a consumer allegedly would not understand that some of the ingredients listed on the products' back labels are synthetic.

The amended complaint claims defendant's misrepresentations respecting the products' ingredients induced plaintiff and the putative class members to buy products different from what defendant represented, at price premiums plaintiff and the putative class members would not have otherwise paid. Plaintiff claims she would not have purchased the products had defendant truthfully described their ingredients.

Plaintiff also alleges she "continues to desire to purchase 'Natural' products" and would buy the products in the future if it were possible to determine prior to purchase whether they were accurately marketed and labeled. (Am. Compl. at 46 ¶ 37). According to the amended complaint, plaintiff "regularly visits" stores selling the products, but she does not buy any of them because she cannot determine whether they remain deceptively labeled. (Id.).

## DISCUSSION

I. Standard of Review

Defendants seeks dismissal pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6).

A. Rule 12(b)(1)

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation omitted). A cause of action "is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it," Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (quoting Makarova v. United States,

4

201 F.3d 110, 113 (2d Cir. 2000)), including when the plaintiff lacks standing to pursue the claim, Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.6 (2d Cir. 2006). The party invoking the Court's jurisdiction has the burden to establish that jurisdiction exists. Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

When deciding whether subject matter jurisdiction exists at the pleading stage, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Conyers v. Rossides, 558 F.3d at 143. "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992) (citing Norton v. Larney, 266 U.S. 511, 515 (1925)). When a defendant moves to dismiss for lack of subject matter jurisdiction and on other grounds, the court typically should consider the Rule 12(b)(1) challenge first. Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

If a plaintiff lacks Article III standing, a court lacks subject matter jurisdiction to hear the plaintiff's claim. Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005). Constitutional standing requires a plaintiff to establish at minimum three elements: (i) an "injury in fact"; (ii) a causal connection between the injury and defendant's conduct; and (iii) likelihood that a federal court decision will redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992). "[A] plaintiff must demonstrate standing separately for each form of relief sought." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000) (citations omitted). Ordinarily, a court should assess constitutional standing before reaching the merits; however, "statutory standing may be assumed for the purposes of deciding whether the plaintiff otherwise has a viable cause of action." Coan v. Kaufman, 457 F.3d 250, 256 (2d Cir. 2006) (citations omitted).

5

B.  Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003). Prior to discovery, a plaintiff may defeat a motion to dismiss "by pleading in good faith legally sufficient allegations of jurisdiction." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990) (internal citation omitted). A plaintiff can do so through "affidavits and supporting material[s] containing an averment of facts that, if credited . . . , would suffice to establish jurisdiction over the defendant." Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) (alterations in original) (quotations and citations omitted). When there has been no hearing on the merits, "all pleadings and affidavits must be construed in the light most favorable to [the plaintiff,] and all doubts must be resolved in . . . [the] plaintiff's favor." Landoil Res. Corp. v. Alexander & Alexander Servs. Inc., 918 F.2d 1039, 1043 (2d Cir. 1990). "[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79–80 (2d Cir. 1993). When a defendant moves to dismiss under Rules 12(b)(2) and 12(b)(6), the court must resolve the Rule 12(b)(2) motion first. See Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963); Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 224 (S.D.N.Y. 2013).

C.  Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion for failure to state a claim, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the U.S. Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the complaint's allegations must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

II.  Standing

Defendant argues plaintiff lacks standing to (i) assert claims for prospective injunctive relief, (ii) assert claims with respect to products she did not purchase, and (iii) sue on behalf of putative class members foreign to New York. The Court takes up each point in turn.

A.  Prospective Injunctive Relief

Defendant argues plaintiff lacks standing to seek prospective injunctive relief because she fails adequately to plead defendant's conduct will cause her to suffer a cognizable future injury.

The Court agrees.

A plaintiff who concedes she is no longer likely to purchase a product because she knows of a defendant's alleged deception and false advertising lacks standing to enjoin the defendant's

7

sales practices. See Kommer v. Bayer Consumer Health, 710 F. App'x 43, 44 (2d Cir. 2018) (summary order).

Here, plaintiff alleges she "would not have purchased" the products "[h]ad [she] known the truth—that the representations she relied upon in purchasing the products were false, misleading, and deceptive." (Am. Compl. at 46 ¶ 34). Thus, plaintiff cannot show a likelihood of future injury sufficient to generate Article III standing to pursue injunctive relief.

Accordingly, plaintiff's class action claims for injunctive relief are dismissed.

B.   Products Plaintiff Did Not Purchase

Next, defendant argues the Court should dismiss for lack of class standing plaintiff's claims arising from products she has not purchased.

The Court disagrees.

In NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145 (2d Cir. 2012), the Second Circuit held that "a plaintiff has class standing if he plausibly alleges (1) that he 'personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant,' and (2) that such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants." Id. at 162 (omission in original) (quoting Blum v. Yaretsky, 457 U.S. 991, 999 (1982); Gratz v. Bollinger, 539 U.S. 244, 267 (2003)). The court further noted that "in the context of claims alleging injury based on misrepresentations," whether the defendant's alleged "conduct implicates the same set of concerns for distinct sets of plaintiffs . . . will depend on the nature and content of the specific misrepresentation[s] alleged." Id. at 162.

Since NECA-IBEW was decided, district courts in this Circuit have divided on the question whether class standing should be resolved at the class certification stage or on a motion

8

to dismiss. See Buonasera v. Honest Co., 208 F. Supp. 3d 555, 562–63 (S.D.N.Y. 2016) (collecting cases). Several "have held that, subject to further inquiry at the class certification stage, a named plaintiff has standing to bring class action claims under state consumer protection laws for products that he did not purchase, so long as those products, and the false or deceptive manner in which they were marketed, are 'sufficiently similar' to the products that the named plaintiff did purchase." Daniel v. Tootsie Roll Indus., LLC, 2018 WL 3650015, at *5 (S.D.N.Y. Aug. 1, 2018) (quoting Mosley v. Vitalize Labs, LLC, 2015 WL 5022635, at *7 (E.D.N.Y. Aug. 24, 2015)) (citations omitted).

Here, assuming without deciding that the Court properly assesses the question at the pleading stage, the products are sufficiently similar to support plaintiff's class standing. Each product is allegedly (i) a cosmetic product (ii) sold and marketed by defendant and (iii) labeled and marketed as "natural" (or, in one instance, "naturally perfect for the whole family" (Am. Compl. at 9)), and (iv) plaintiff alleges each product contains one or more synthetic ingredients. These similarities suffice to confer class standing at the motion to dismiss stage. Cf. Buonasera v. Honest Co., 208 F. Supp. 3d at 559, 563 (citation omitted) (finding plaintiff had class standing as to thirty-nine unpurchased cosmetics products allegedly mislabeled as "'natural,' 'all natural,' 'naturally derived,' 'plant-based,' and/or containing 'no harsh chemicals ever!,'" despite that "the unpurchased products may contain different ingredients compared to the purchased products").

Accordingly, the Court denies without prejudice defendant's motion to dismiss for lack of class standing plaintiff's claims arising from products she did not purchase. Defendant may renew this argument at the class certification stage.

9

C. Putative Class Members Foreign to New York

Defendant also argues plaintiff lacks individual standing to bring a putative nationwide class action under any state's laws except her own, and that the Court should dismiss plaintiff's claims brought on behalf of putative class members foreign to New York (the "out-of-state claims") to the extent those claims rely on other states' laws.

The Court disagrees.

Recent Second Circuit precedent makes clear that plaintiff has standing to pursue a Rule 23(b)(3), "money damages" class action claim arising from a non-New York state statute. In Langan v. Johnson & Johnson Consumer Cos., 897 F.3d 88 (2d Cir. 2018), decided after the instant motion was fully submitted, the Second Circuit squarely held "that whether a plaintiff can bring a class action under the state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of standing under Article III." Id. at 96. Thus, "as long as the named plaintiffs have standing to sue the named defendants," such an action is not subject to dismissal at the pleading stage for lack of constitutional standing. Id. at 93.

Accordingly, because plaintiff has individual standing to sue defendant, the Court will not dismiss for lack of standing plaintiff's out-of-state claims for money damages.

III. Personal Jurisdiction

Defendant argues the Court lacks personal jurisdiction over defendant as to plaintiff's claims on behalf of the proposed nationwide class.

The Court declines to resolve this issue at the pleading stage.

To determine whether personal jurisdiction exists over a non-domiciliary defendant, the Court engages in a two-step inquiry. Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010) (citation omitted). First, the Court determines whether the forum state's law

permits the exercise of jurisdiction over the defendant. Id. "[T]he second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." Id. at 164. When the action is brought as a purported class action, "personal jurisdiction over each defendant is assessed with respect to the named plaintiffs' causes of action." Chernus v. Logitech, Inc., 2018 WL 1981481, at *3 (D.N.J. Apr. 27, 2018) (collecting authorities).

"[A] court may exercise two types of personal jurisdiction over a corporate defendant properly served with process. These are specific (also called 'case-linked') jurisdiction and general (or 'all-purpose') jurisdiction." Brown v. Lockheed Martin Corp., 814 F.3d 619, 624 (2d Cir. 2016). Here, plaintiff invokes specific jurisdiction only. The Court proceeds accordingly.

Specific jurisdiction over a defendant exists "in a suit arising out of or related to the defendant's contacts with the forum." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984). "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cty., 137 S. Ct. 1773, 1780 (2017) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)) [hereinafter Bristol-Myers].

Defendant argues this Court lacks specific jurisdiction over plaintiff's out-of-state claims pursuant to the Supreme Court's opinion in Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County, 137 S. Ct. 1773 (2017). In that case—a state-court mass tort action with more than 600 named plaintiffs—the Court explained that "for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.' When there is no such connection, specific jurisdiction is lacking regardless of the extent

11

of a defendant's unconnected activities in the State." Id. at 1781 (alteration in original) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. at 919) (citation omitted). Emphasizing that specific jurisdiction requires "the suit [to] aris[e] out of or relat[e] to the defendant's contacts with the forum," id. at 1780 (second and third alterations in original) (quoting Daimler AG v. Bauman, 571 U.S. 117, 127 (2014)) (citations omitted), the Court found the California courts lacked specific jurisdiction over named plaintiffs foreign to California who had not alleged any injury there, see id. at 1782.

The Bristol-Myers Court reserved decision whether its holding respecting specific jurisdiction over out-of-state plaintiffs alleging out-of-state injuries extended to class-action claims brought in federal court. See Bristol-Myers, 137 S. Ct. at 1783–84. No circuit court has yet addressed this question, and the district courts are in disagreement. See generally Justin A. Stone, Note, Totally Class-Less?: Examining Bristol-Myers's Applicability to Class Actions, 87 Fordham L. Rev. 807 (2018).[4]

The Court concludes personal jurisdiction over plaintiff's out-of-state claims is best assessed at the class certification stage, not on the instant motion to dismiss. Specific jurisdiction in a class action arises from the named plaintiff's causes of action, and defendant is indisputably subject to the Court's specific jurisdiction as to plaintiff's claims. At present, the potential out-of-state class members are precisely that—potential class members who are not, and may never be, joined in this action. Thus, the Court need not assess personal jurisdiction over plaintiff's putative out-of-state class action claims unless and until the Court decides a class

---

[4] Most district courts have concluded Bristol-Myers does not apply to federal-court class actions, while a minority (principally in the Northern District of Illinois) have reached the opposition conclusion. See, e.g., Knotts v. Nissan N. Am., Inc., 346 F. Supp. 3d 1310, 1332 (D. Minn. 2018) (collecting cases); Chernus v. Logitech, Inc., 2018 WL 1981481, at *7 (collecting cases).

comprising out-of-state class members merits certification. See Gonzalez v. Costco Wholesale Corp., 2018 WL 4783962, at *8 (E.D.N.Y. Sept. 29, 2018) ("[T]his court will defer its resolution of this issue until Plaintiff files a motion for class certification." (citation omitted)); Chernus v. Logitech, Inc., 2018 WL 1981481, at *8 ("[I]t is more prudent to address [personal jurisdiction over out-of-state putative class members] at the class certification stage.").

Thus, the Court denies without prejudice defendant's motion to dismiss for lack of personal jurisdiction plaintiff's out-of-state class action claims.

IV. Puffery

Defendant argues the Court should dismiss plaintiff's claims because the contested descriptions of its products are non-actionable puffery.

The Court disagrees.

"Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language," Kacocha v. Nestle Purina Petcare Co., 2016 WL 4367991, at *16 (S.D.N.Y. Aug. 12, 2016) (quoting Chobani, LLC v. Dannon Co., 157 F. Supp. 3d 190, 202 (N.D.N.Y. 2016))—in other words, a "[s]ubjective claim[]" about a product that "cannot be proven either true or false," Lipton v. Nature Co., 71 F.3d 464, 474 (2d Cir. 1995) (analyzing unfair competition claim brought under federal law). Accordingly, a statement may be puffery only if "a reasonable consumer would not interpret [it] as a factual claim upon which he could rely." Solak v. Hain Celestial Grp., Inc., 2018 WL 1870474, at *6 (S.D.N.Y. Apr. 17, 2018) (quoting Fink v. Time Warner Cable, 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011)) (citation omitted). Puffery is not actionable under consumer protection statutes. See Kacocha v. Netsle Purina Petcare Co., 2016 WL 4367991, at *16 (citations omitted).

Defendants' disputed descriptions of the products as "natural" are not mere puffery. "The term 'natural' is an affirmative claim about a product's qualities and is, therefore, not 'an exaggeration or overstatement expressed in broad, vague, and commendatory language.'" Petrosino v. Stearn's Prods., Inc., 2018 WL 1614349, at *7 n.6 (S.D.N.Y. Mar. 30, 2018) (citations omitted). Because a reasonable consumer could interpret the disputed product descriptions as factual claims on which he or she could rely, the Court denies defendant's request for dismissal on the ground that defendant's alleged misrepresentations are non-actionable.

V.      GBL Sections 349 and 350

Defendant argues the Court should dismiss plaintiff's GBL claims because plaintiff fails plausibly to allege a reasonable consumer would find the products' labels materially deceptive or misleading.

The Court disagrees.

To state a claim under GBL Section 349 or Section 350, a plaintiff plausibly must allege "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam); see Goshen v. Mut. Life Ins. Co. of N.Y., 98 N.Y.2d 314, 324 n.1 (2002). Conduct is materially misleading if it "would mislead 'a reasonable consumer acting reasonably under the circumstances.'" Bowring v. Sapporo U.S.A., Inc., 234 F. Supp. 3d 386, 980 (E.D.N.Y. 2017) (quoting Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015)). To determine whether conduct is materially misleading, courts assess "each allegedly misleading statement in light of its context on the product label or advertisement as a whole," contemplating "the entire mosaic . . . rather than each tile separately." Belfiore v. Procter & Gamble Co., 311 F.R.D. 29, 53 (E.D.N.Y. 2015) (internal quotation marks and citations omitted). This objective

14

inquiry is typically unsuited to resolution at the pleading stage. See Bowring v. Sapporo U.S.A., Inc., 234 F. Supp. 3d at 390.

Construing the amended complaint in the light most favorable to plaintiff, it adequately alleges defendants' descriptions of the products as "natural" or "naturally perfect for the whole family" would deceive a reasonable consumer. Such a consumer could plausibly interpret those descriptions as suggesting that the products contain only natural ingredients. See Sitt v. Nature's Bounty, Inc., 2016 WL 5372794, at *13–14 (E.D.N.Y. Sept. 26, 2016) (named plaintiff sufficiently pleaded products prominently labeled "Natural Whole Herb" and "Natural Menopausal Relief" were materially misleading). Indeed, defendant has not cited any case to the contrary.

Defendant asserts the products' back labels comprehensively list each product's ingredients. But even if true, this would not render plaintiff's allegations insufficient: "that the fine print on the back of the labeling could indicate to a consumer that other ingredients were not 'natural' does not render another conclusion so patently or objectively unreasonable so as to warrant dismissal as a matter of law based on the reasonable consumer prong." Sitt v. Nature's Bounty, Inc., 2016 WL 5372794, at *14. And while defendant has argued at considerable length that the allegedly synthetic ingredients are properly characterized as natural (see Doc. #29 at 20–28), that question of fact is improperly resolved on a motion to dismiss, when the Court must accept plaintiff's well-pleaded allegations as true and draw all reasonable inferences in plaintiff's favor.

Accordingly, the Court declines to dismiss plaintiff's claims under GBL Sections 349 and 350.

VI.     Breach of Express Warranty

Defendant argues plaintiff's breach of express warranty claim must be dismissed because plaintiff (i) fails adequately to plead she and defendant were in privity, and (ii) failed to provide defendant pre-suit notice as required by the New York Uniform Commercial Code ("UCC").[5]

The Court disagrees.

A.      Privity

First, plaintiff need not be in privity with defendant to prevail on her breach of express warranty claim.

In Randy Knitwear, Inc. v. American Cyanamid Co., 11 N.Y. 2d 5 (1962), the New York Court of Appeals "dispensed with" the privity requirement in actions "for breach of express warranty by a remote purchaser against a manufacturer who induced the purchase by representing the quality of the goods in public advertising and on labels which accompanied the goods." Id. at 11. The Court reasoned that a manufacturer who has "invited and solicited the use" of its product "should not be permitted to avoid responsibility . . . by claiming that he made no contract directly with the user." Id. at 13.

Several courts have interpreted Randy Knitwear as holding that "privity is not required to sustain a cause of action seeking to recover damages for breach of an express warranty." Murrin v. Ford Motor Co., 303 A.D.2d 475, 477 (2d Dep't 2003) (citing Randy Knitwear v. Am. Cyanamid Co., 11 N.Y.2d 5); accord Mahoney v. Endo Health Sols., Inc., 2016 WL 3951185, at

---

[5]     Defendant also contends the breach of express warranty claim should be dismissed because none of the disputed statements on the products' labels is deceptive as a matter of law. "However, as the Court is unable to determine as a matter of law that the statements are not misleading under GBL § 349 [or 350], it is equally inappropriate to determine they are not misleading for the warranty claim." Goldemberg v. Johnson & Johnson Consumer Cos., 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014).

16

*6–7 (S.D.N.Y. July 20, 2016) (citations omitted). Other courts have read Randy Knitwear more narrowly, as eliminating the privity requirement only for express warranty claims arising from a defendant's "public advertising or sales literature." See Weisblum v. Prophase Labs, Inc., 88 F. Supp. 3d 283, 295–96 (S.D.N.Y. 2015) (citations omitted); Carcone v. Gordon Heating & Air Conditioning Co., 212 A.D.2d 1017, 1017 (4th Dep't 1995) (describing Randy Knitwear as an "exception to th[e] general rule" that privity is an "essential element" of an express warranty claim).[6]

The Court need not resolve this question, because the amended complaint plausibly alleges a breach of express warranty arising from defendant's public advertising—namely, the products' labeling and the images of those labels allegedly displayed online. See Weisblum v. Prophase Labs, Inc., 88 F. Supp. 3d at 287, 295–96 (citations omitted) (statements on product labeling and packaging are "public advertising or sales literature" to which Randy Knitwear applies). Thus, even if Randy Knitwear's holding is more narrowly construed, plaintiff need not allege privity with defendant to state a claim for breach of express warranty.

B.  Pre-Suit Notice

Second, plaintiff adequately pleads compliance with the pre-suit notice requirement.

The New York UCC requires that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.Y. U.C.C. § 2-607(3)(a). This "rule of requiring notification is designed to defeat

---

[6] Some district courts in this Circuit have concluded New York's adoption of the UCC abrogated Randy Knitwear. See, e.g., Ebin v. Kangadis Food Inc., 2013 WL 6504547, at *6 (S.D.N.Y. Dec. 11, 2013) (declining to rely on Randy Knitwear because it "preceded the enactment of the UCC, which displaced it"). The Court disagrees. See Mahoney v. Endo Health Sols., Inc., 2016 WL 3951185, at *6–7 (citations omitted) (persuasively concluding Randy Knitwear remains good law).

17

commercial bad faith, not to deprive a good faith consumer of his remedy." Id. cmt. 4. Thus, "[t]he content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched," and it need not claim damages, threaten litigation, or "include a clear statement of all the objections that will be relied on by the buyer." Id. "[T]he sufficiency and timeliness of the notice is generally a question for the jury." Tomasino v. Estee Lauder Cos., 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (alteration in original) (citation omitted).

The amended complaint specifically alleges plaintiff mailed defendant a "Pre-Suit Notice letter" on June 2, 2017, asserting defendant "breached the express warranty" under New York law "because the Product does not contain 'Natural Elements.'" (Am. Compl. ¶ 90). In view of this allegation, assumed true for purposes of the instant motion, the Court denies defendant's motion to dismiss for failure to provide pre-suit notice of plaintiff's breach of express warranty claim. See Feliciano v. General Motors LLC, 2016 WL 9344120, at *4 (S.D.N.Y. Mar. 31, 2016) (citations omitted) ("Because Plaintiffs have pleaded that they provided written notice and the Court must accept all factual allegations in the complaint as true, Defendants' motion to dismiss on this ground must be denied." (citations omitted)).

Accordingly, the Court declines to dismiss plaintiff's breach of express warranty claim.

VII. Magnuson-Moss Warranty Act

Finally, defendant argues plaintiff's federal MMWA claim must be dismissed for failure to state a claim.

The Court disagrees.

Although the MMWA is a federal statute, liability under it is based on state warranty laws. See Kaatz v. Hyland's Inc., 2016 WL 3676697, at *4 n.5 (citing Ebin v. Kangadis Food

<u>Inc.</u>, 2013 WL 3936193, at *2 n.3 (S.D.N.Y. July 26, 2013) (noting the MMWA "merely incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages")). Accordingly, because plaintiff's underlying damages claims survive dismissal, plaintiff's MMWA claim does, as well. <u>See</u> <u>id</u>.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff's claims for injunctive relief are dismissed. All other claims shall proceed.

By March 18, 2019, defendant shall file an answer to the amended complaint.

The Clerk is instructed to terminate the motion. (Doc. #28).

Dated: March 4, 2019
       White Plains, NY

                              SO ORDERED:

                              Vincent L. Briccetti
                              United States District Judge